**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**ONE 56–FOOT MOTOR YACHT NAMED
the TAHUNA, Defendant-Appellant,**

and

**New Approach, Inc., Claimant-Appellant.**

**No. 81–4630.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1982.

Decided March 2, 1983.

As Amended June 16, 1983.

Bernard L. Segal, San Francisco, Cal., for claimant-appellant.

Joseph Burton, Dennis M. Nerney, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.

Before KASHIWA,* WALLACE, and ANDERSON, Circuit Judges.

WALLACE, Circuit Judge:

New Approach, Inc. (New Approach) purchased a fifty-six-foot pleasure yacht, the *Tahuna*. It was seized by the government due to alleged clandestine activity occurring prior to the purchase by New Approach. New Approach appeals from a summary judgment of forfeiture entered pursuant to 21 U.S.C. §§ 841(a), 881, and 952. We affirm.

## I

We first dispose of the government's contention that New Approach lacks standing as a claimant to contest the forfeiture of the vessel. The government has conceded, for purposes of its motion for summary judgment, that New Approach was a bona fide purchaser.[1] The government asserts, however, that New Approach lacks standing because under the forfeiture laws of the United States, the government's right to forfeiture of the vessel vested at the moment the yacht was used to transport contraband. New Approach, therefore, acquired no legal interest in the yacht when it attempted to purchase it several months later and thus cannot contest its forfeiture to the United States.

The government's argument, while superficially appealing, is based on the very conclusion the forfeiture proceeding is designed to reach. Assuming that the forfeiture of a vessel relates back to the moment of commission of the illegal act "and avoids all intermediate sales and alienations, even as to purchasers in good faith," *Simons v. United States*, 541 F.2d 1351,

1352 (9th Cir.1976), *citing United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890), it does not follow that a subsequent purchaser lacks standing to challenge the forfeiture. The government's legal title is not established until after it has complied with the forfeiture procedures mandated by statute. *United States v. Stowell, supra*, 133 U.S. at 16–17, 10 S.Ct. at 247; *Ivers v. United States*, 581 F.2d 1362, 1367 (9th Cir.1978). Therefore, we hold that the owner of a vehicle allegedly used to transport contraband has standing to contest the forfeiture. *See United States v. Fifteen Thousand Five Hundred Dollars United States Currency*, 558 F.2d 1359, 1360 (9th Cir.1977) ("[O]ne who contests a forfeiture must be a claimant. A 'claimant' is one who claims to own the article or merchandise or to have an interest therein."); *see also United States v. One 1945 Douglas C–54 (DC 4) Aircraft*, 604 F.2d 27 (8th Cir.1979), *cert. denied*, 454 U.S. 1143, 102 S.Ct. 1002, 71 L.Ed.2d 294 (1982).

## II

We take the facts of this case from documents filed by the government in support of its request that the *Tahuna* be seized. On November 16, 1978, the Royal Canadian Mounted Police (R.C.M.P.) searched the vessel *Euphoric* upon its arrival in Victoria, British Columbia. The police discovered twelve marijuana Thai sticks and took into custody the vessel's crew. Russell, the mate aboard the *Euphoric*, stated that he had been hired to transport approximately 7,000 pounds of marijuana from Thailand to a point about 250 miles west of San Francisco, where he transferred the marijuana to the vessel *Tahuna* in early November, 1978. Russell further stated that there were four people aboard the *Tahuna*, two of whom he knew by the names of Danny and John. After this transfer of marijuana at sea, Russell observed the *Tahuna* sail towards San Francisco.

---

* Honorable Shiro Kashiwa, Circuit Judge, United States Court of Appeals for the Federal Circuit, sitting by designation.

1. New Approach has not raised the question whether operation of the forfeiture statutes

against a vessel which has been purchased by an innocent party without notice of its prior illegal use constitutes an unconstitutional deprivation of property. We therefore do not reach this question.

The *Euphoric* cook, Suan Kui Tan, presented a diary in response to a request that he bring his personal possessions to the police station. The diary stated on a page preprinted "October 23, 1978" that the *Euphoric* met the *Tahuna* 250 miles west of San Francisco and that the *Tahuna* was crewed by "Gordon, Ray, John, and Capt. Danny." The diary also stated on two pages preprinted "November 2 and 3, 1978" that the *Tahuna* returned to the rendezvous point and that the "cargo" was transferred to it.

On December 4, 1978, Drug Enforcement Administration (DEA) agent Petrotta interviewed Sergeant Parrick of the Richmond, California police department. Parrick stated that he observed the vessel *Tahuna* at the Blue Bahia Marina in Richmond on or about November 1, 1978, observed it missing from the dock on November 2 and 3, and next observed it at that location on or about November 4, 5, or 6.

On June 21, 1979, Petrotta interviewed Pell, president of the Blue Bahia Boatworks, where the *Tahuna* was docked between October, 1978, and March, 1979. Based on a review of his business records and the amount of rent paid for the month of October, Pell estimated that the *Tahuna* first arrived at his boatworks on or near October 20, 1978. Pell further stated that during the first three weeks of the vessel's presence there, it left once for a period of five to six days.

On June 11, 1979, Petrotta observed the *Tahuna* docked at Edgewater Yacht Sales in Sausalito, California. Identifying himself as a potential purchaser, Petrotta was taken aboard by a salesman, who showed him the vessel. While in the cargo hold, Petrotta found ten to fifteen seeds on the floor. Suspecting they were marijuana seeds, he seized six of them. Petrotta took the seeds to Chan, a DEA chemist, who stated that they resembled marijuana but that he could not give a certain identification. An attempt to obtain positive identification by germinating one of the seeds failed when the sprouted seedling died.

Petrotta prepared an affidavit of probable cause and presented it to a United States magistrate, requesting that a seizure warrant be issued. The affidavit relied on the following information: (1) the statements of Russell relating the transfer of marijuana between the *Euphoric* and the *Tahuna* in early November, 1978; (2) the entries from Tan's diary relating to the preliminary meeting at sea and the second meeting and transfer of cargo from the *Euphoric* to the *Tahuna* on November 2 and 3, 1978; (3) the statements of Pell and Parrick corroborating the movement of the *Tahuna* in early November; and (4) Petrotta's seizure of the six suspected marijuana seeds from the floor of the *Tahuna*'s cargo hold and the subsequent statement of DEA chemist Chan that they resembled marijuana. Based on Petrotta's affidavit, the magistrate issued a warrant of seizure. The yacht was seized on June 29, 1979.

The government initiated forfeiture proceedings against the *Tahuna* on July 2, 1979 by filing a complaint in the United States District Court. New Approach eventually came forward as a claimant and alleged ownership of the vessel. After lengthy pretrial proceedings, the United States moved for summary judgment, filing in support thereof the same affidavit upon which the magistrate had relied in issuing the seizure warrant. Four months later, after both parties had filed numerous memoranda and declarations, the district court granted the government's motion for summary judgment and entered judgment of forfeiture against the *Tahuna*. New Approach filed a timely notice of appeal. We have jurisdiction to hear the appeal pursuant to 28 U.S.C. § 1291.

### III

■ The entry of a summary judgment raises a freely reviewable question of law. *La Riviere v. EEOC,* 682 F.2d 1275, 1277–78 (9th Cir.1982). A summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Gaines v. Haughton,* 645 F.2d 761, 769 (9th Cir.1981), *cert. denied,* 454 U.S. 1145,

102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). Although we evaluate every summary judgment by viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion, 645 F.2d at 769, the "[s]ummary judgment procedures under Rule 56, Fed.R.Civ.P., must necessarily be construed in the light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein. Those procedures themselves are quite summary, especially when compared to normal civil actions." *United States v. One 1975 Mercedes 280S,* 590 F.2d 196, 199 (6th Cir.1978) (per curiam).

The forfeiture proceeding was instituted pursuant to 21 U.S.C. § 881 and 49 U.S.C. §§ 781 and 782, which empower the government to forfeit vehicles used to import controlled substances such as marijuana. By virtue of 21 U.S.C. § 881(d) and 49 U.S.C. § 784, the burden of proof in this action is controlled by 19 U.S.C. § 1615, which provides in part that "[i]n all suits or actions . . . brought for the forfeiture of any vessel . . . where the property is claimed by any person, the burden of proof shall lie upon such claimant; . . . · *Provided,* That probable cause shall be first shown for the institution of such suit or action . . . ."[2] We explained the plain meaning of section 1615, as applied to the statutory law of forfeitures, in *United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106 (9th Cir.1976) (per curiam):

Unlike most civil and criminal proceedings, the burden of proof is on the "accused" owner or possessor, provided that the government first make a preliminary showing of probable cause to believe that

the vehicle was used in the smuggling operation.

*Id.* at 1107.

It is apparent from section 1615 that a claimant in a forfeiture proceeding may defend against forfeiture of its property in either or both of two ways: first, it may refute the government's showing of probable cause, and second, it may come forward with affirmative evidence and prove, by a preponderance of the evidence, that the vessel was not used for the illegal purpose as alleged. The claimant in this action only contends that the government lacked probable cause to institute the forfeiture proceeding. New Approach has not introduced any evidence tending to prove that the vessel was not used to transport marijuana.

■ It is well-settled that a showing of probable cause to believe a vessel was used to transport controlled substances in violation of the federal narcotics laws is sufficient by itself to warrant a forfeiture. *United States v. One 1976 Porsche 911S,* 670 F.2d 810 (9th Cir.1979) (per curiam); *United States v. One Twin Engine Beech Airplane, supra,* 533 F.2d at 1110. Therefore, we must affirm the district court's entry of summary judgment in favor of the government if, viewing the record in the light most favorable to New Approach, there is no reasonable dispute as to the facts relevant to the issue of probable cause, and the government is entitled to judgment as a matter of law.

■ The standard of probable cause to support a seizure for forfeiture is similar to that required to obtain a search warrant.[3]

---

**2.** We upheld the constitutionality of 19 U.S.C. § 1615 in *United States v. One 1970 Pontiac GTO, 2-Door Hardtop,* 529 F.2d 65 (9th Cir. 1976) (per curiam), against an argument that allocating the burden of proof to the claimant violates due process. At least two other circuits have reached the same conclusion. *United States v. $2,500 in United States Currency,* 689 F.2d 10 (2d Cir.1982); *Bramble v. Richardson,* 498 F.2d 968, 970 & n. 2 (10th Cir.) (absence of reasonable doubt standard in forfeiture action does not deny due process), *cert. denied,* 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974).

**3.** *United States v. Johnson,* 572 F.2d 227 (9th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1137 (1978) (*Johnson*), is not to the contrary. In that case, we stated that "[t]he standard of probable cause to support a seizure for forfeiture is less precise and rigorous than that required to obtain a search warrant in ordinary circumstances." This language simply refers to the broader set of circumstances justifying a seizure for forfeiture. As we explained in *Johnson,* a vessel may be seized for forfeiture "even in the absence of probable cause to believe it contains contraband if there is nonetheless probable cause to believe that it

*United States v. One 1975 Mercedes 280S, supra,* 590 F.2d at 199; *see United States v. One Twin Engine Beech Airplane, supra,* 533 F.2d at 1109. To meet its burden, the government must show that it had reasonable grounds to believe the vessel was used to transport narcotics, supported by less than prima facie proof but more than mere suspicion. *United States v. Eighty Three Thousand Three Hundred Twenty Dollars in United States Currency,* 682 F.2d 573, 577 (6th Cir.1982); *United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars in United States Currency,* 661 F.2d 319, 323 (5th Cir.1981); *United States v. One Twin Engine Beech Airplane, supra,* 533 F.2d at 1108, 1110.

■ New Approach argues that the government must prove probable cause by at least a preponderance of the evidence if not by clear and convincing evidence. It cites *United States v. One 1970 Pontiac GTO, 2-Door Hardtop,* 529 F.2d 65 (9th Cir. 1976) (per curiam), in support of its argument. In that case, however, we expressly declined to determine whether the government had to meet a clear and convincing standard of proof. *Id.* at 66. In addition, the case must be read in light of our subsequent forfeiture cases. *See, e.g., United States v. One Twin Engine Beech Airplane, supra,* and 19 U.S.C. § 1615. It then becomes clear that the various levels of burden of proof have no application to the question of probable cause. That question concerns "only the probability, and not a prima facie showing, of criminal activity." *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969); *see also United States v. One 1977 Lincoln Mark V. Coupe,* 643 F.2d 154, 156–57 (3d Cir.), *cert. denied,* 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). It therefore seems inappropriate to speak in terms of probable cause being "proven" by one or another of the standards of proof applicable to proving

the facts essential to establish a prima facie case. Perhaps it is for this reason that courts and legislatures have almost universally spoken in terms of a "showing" of probable cause. *See, e.g.,* 19 U.S.C. § 1615. The determination of probable cause in a forfeiture proceeding simply involves the question whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that the vessel was used to transport controlled substances. *See United States v. One Twin Engine Beech Airplane, supra,* 533 F.2d at 1108; *cf. Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (describing standard of probable cause for warrantless arrest). New Approach reads too much into our decision in *United States v. One 1970 Pontiac GTO, 2-Door Hardtop, supra.*

To meet its burden of showing probable cause, the government relied on the same affidavit that Petrotta had prepared to obtain the seizure warrant. New Approach disputes the government's claim of probable cause on two bases. First, New Approach asserts that all of the information relied on in Petrotta's affidavit is inadmissible evidence either because it is hearsay not within any exception to the hearsay rule or, in the case of Tan's diary, because it is not sufficiently authenticated. New Approach asserts as a general premise that the government cannot obtain forfeiture of a vessel on the basis of totally incompetent evidence. Second, New Approach disputes the legal sufficiency of the evidence upon which the government relied by pointing to supposed inconsistencies and by introducing evidence allegedly casting doubt on the validity of the information upon which Petrotta relied.

### A.

We first address New Approach's contention that the government may not obtain a

---

was used 'to facilitate the transfer of contraband.'" 572 F.2d at 234, *quoting United States v. La Vecchia,* 513 F.2d 1210, 1216 (2d Cir. 1975). Although probable cause to seize may exist under broader circumstances in a forfeiture situation, the question of the sufficiency and reliability of the information used to estab-

lish probable cause involves a legal standard that is essentially the same regardless of whether a warrant is sought to search a vehicle because it currently contains contraband, or forfeiture is sought because a vehicle was used to transport contraband in the past.

forfeiture on the basis of wholly inadmissible evidence. In support of its argument, New Approach cites Federal Rule of Civil Procedure 56(e), which provides that affidavits in support of or opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

■ The simple answer is that "[s]ummary judgment procedures under Rule 56, Fed.R.Civ.P., must necessarily be construed in the light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein." *United States v. One 1975 Mercedes 280S, supra,* 590 F.2d at 199. If the issue were whether the vessel was in fact used in violation of the federal narcotics laws, rule 56(e) would apply. The peculiar procedural requirements of the forfeiture laws, however, lead us to conclude that rule 56(e) does not apply when, as here, the sole issue is whether the government has established probable cause to seek forfeiture. To rule otherwise would impose on the government the burden of proving, by competent evidence, that a vessel was used to transport illegal narcotics before it may obtain forfeiture. This would clearly undermine Congress's intentional shifting of the burden of proof to the claimant. *See* 19 U.S.C. § 1615.

■ Thus, we need not consider which, if any, of the evidence contained in the affidavit of probable cause would have been admissible to prove that the vessel was actually involved in smuggling marijuana. The question of probable cause depends not upon the admissibility of the evidence upon which the government relies but only upon the legal sufficiency and reliability of the evidence. *See, e.g., Franks v. Delaware,* 438 U.S. 154, 165, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) ("probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily"); *Spinelli v. United States,*

*supra,* 393 U.S. at 419, 89 S.Ct. at 590 ("affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial"); *Ted's Motors, Inc. v. United States,* 217 F.2d 777, 780 (8th Cir.1954) ("[w]e have no doubt that information of guilt, even though hearsay and incompetent with respect to the merits of a case such as the instant one, may constitute probable cause ... justifying the institution of the [forfeiture] action"). We, along with other circuits, have upheld the government's showing of probable cause to initiate forfeiture proceedings on the basis of otherwise inadmissible hearsay. *See, e.g., United States v. One Twin Engine Beech Airplane, supra; United States v. One 1975 Mercedes 280S, supra; Ted's Motors, Inc. v. United States, supra.*

New Approach argues that due process requires that there be at least some admissible evidence that an illegal act has taken place in order for the government to obtain forfeiture. The case cited in support of this argument, however, *Thompson v. City of Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), concerns a criminal conviction. It is therefore easily distinguishable from the instant forfeiture proceeding, which is civil in nature. *See United States v. Two Hundred Ninety-Five Ivory Carvings,* 689 F.2d 850, 858 (9th Cir.1982); *United States v. One Pontiac GTO, 2-Door Hardtop, supra,* 529 F.2d at 66.

### B.

New Approach next argues that Petrotta's affidavit did not meet the requirements of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), because it did not include sufficient information from which a magistrate could find probable cause that the *Tahuna* carried illegal narcotics into the United States. Specifically, New Approach questions the reliability of the report given by Russell, the mate aboard the *Euphoric.*

■ An affidavit may be based on hearsay information and need not reflect

the direct personal observations of the affiant. *Id.* at 114, 84 S.Ct. at 1514, *citing Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds, United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980). The magistrate, however, must be informed of (1) some of the underlying circumstances from which the informant drew his conclusions and (2) some of the underlying circumstances from which the officer concluded that the informant was credible or that his information was reliable. *Aguilar v. Texas, supra,* 378 U.S. at 114, 84 S.Ct. at 1514. Russell's statements easily meet the first prong of the *Aguilar* test. He stated that he personally observed and assisted in the transfer of the marijuana from the *Euphoric* to the *Tahuna* and that he observed the *Tahuna* sail off towards San Francisco. *See United States v. Lefkowitz,* 618 F.2d 1313, 1316 (9th Cir.), *cert. denied,* 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980).

▆▆▆ Moreover, there was sufficient information from which the district court could have concluded that Russell was credible. The district judge observed that Russell's statements to the R.C.M.P. were against his penal interest. "It is well-settled in this circuit that a declaration against penal interest meets the reliability test of *Aguilar v. Texas.*" *United· States v. Jabara,* 618 F.2d 1319, 1323 (9th Cir.) (citations omitted), *cert. denied,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845, 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980). New Approach argues that the statements are not against Russell's penal interest. We need not reach that issue because we are satisfied that the statements meet the second prong of the *Aguilar* test on a different ground.

▆▆▆ The reliability of an informant's tip can be verified by independent corroboration. *United States v. Prueitt,* 540 F.2d 995, 1005 (9th Cir.1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 790, 50 L.Ed.2d 780 (1977). Russell's report was corroborated by the entries in Tan's diary and was further corroborated by the statements of Pell and Parrick relating to the movement of the *Tahuna* during the first few days of November. This corroboration was sufficient to establish the credibility of Russell.

New Approach also argues that the district court should not have considered Petrotta's testimony regarding Tan's diary in determining whether there was probable cause. New Approach argues that, even if hearsay testimony is acceptable evidence from which to find probable cause, there is no proof that the diary is what the government claims it to be, the diary of cook Tan aboard the *Euphoric,* and therefore its contents are unauthenticated and inadmissible under Federal Rule of Evidence 901.

▆▆▆ We need not decide whether evidence of this kind must be independently admissible as a prerequisite to the government's reliance upon it to establish probable cause. Assuming without deciding that the evidence must be independently admissible, we are satisfied that the contents of the diary are properly authenticated. Federal Rule of Evidence 901(b)(4) provides that "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances" are one permissible means of authentication. The district court found, and we agree, that there was abundant evidence that the diary was Tan's. Sergeant Hawks of the R.C.M.P. reported to Petrotta that Tan himself brought in the diary in response to the R.C.M.P. request. The diary contains the name "Gabriel Tan," an apparent alias, but sufficiently close to Tan's admitted aliases of "Gabriel" and "Gabby Tan." The diary also contains the exact address given by Tan as his address when interrogated by the R.C.M.P. Some of Tan's personal belongings were inside the diary. Tan explained certain diary entries and never disclaimed ownership. Furthermore, it is clear from the many entries in the diary—including records of the meetings with the *Tahuna,* the names of the *Tahuna* crewmen, places passed at various points during the voyage, and the arrival at Victoria—that the diary was the diary of someone on board the *Euphoric* during the

trip when it allegedly rendezvoused with the *Tahuna.* "Where the writings are such that only those persons acquainted with the particular transactions involved could have written them, the authenticity of the evidence is considered more reliable." *United States v. Wilson,* 532 F.2d 641, 645 (8th Cir.), *cert. denied,* 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976). Even if authentication is required, we hold that the diary was properly considered as part of the information supporting the government's showing of probable cause.

New Approach next attacks the government's showing of probable cause by pointing to an alleged discrepancy between Tan's diary, which describes two meetings with the *Tahuna,* and Russell's statements, which refer to only one transfer of marijuana between the vessels. We fail to see any inconsistency between these two accounts. Russell's statement that the *Euphoric* delivered a cargo of marijuana to the *Tahuna* in early November is fully consistent with Tan's diary.[4] Russell's failure to mention the preliminary meeting between the ships does not cast any doubt on the accuracy of his account of the meeting between the boats and the transfer of marijuana in early November.

New Approach also attempted to discredit the corroborative value of that part of the Petrotta affidavit which related an interview with Pell, president of the company which rented docking space for the *Tahuna.* New Approach filed a declaration in the district court in which Pell states that "based upon an examination of my rental records and the amount of rent paid for [the berthing] space for October, 1978, I have concluded that the '*Tahuna*' was first berthed at the yard on or about October '18, 1978." Pell further stated in his declaration that during the six week period between October 18 and November 29, 1978 he "only recall[ed] one occasion during which the '*Tahuna*' was away from its berth for a period of several days. I believe that the vessel was away for four to five days." New Approach argues on appeal that the statements in the Pell declaration raised material questions of fact and that the district court erred in resolving any vagueness on the issue in favor of the government, rather than in favor of New Approach, as the court is required to do on summary judgment.

█ We do not agree with New Approach's assertion that Pell's declaration "pinpoints" the date on which the *Tahuna* first berthed at his boat yard as October 18, 1978. Instead, the October 18 date was chosen by Pell "based upon an examination of my rental records and the amount of rent paid for that space for October, 1978." The fact that a rental space at the dock was reserved as of October 18, 1978 is consistent with the account in Tan's diary of the October 22 preliminary meeting at sea between the two ships. Though it had a rental space reserved at

---

4. Tan's diary includes the following entries:

October 6, 1978: "Reach Destination at about 5:30 p.m. W.P. Stop Engine."

October 7, 1978: "1st day at W.P."

. . . .

October 15, 1978: "Expecting F. Boat but No sign of them. 9th days [sic] at W.P. (250 mile off U.S. Coast)."

. . . .

October 19, 1978: "Misty in the morning. Sea is calm today. 13th day at New W.P. 250 mile off the Coast of California/San Francisco."

. . . .

October 22, 1978: "Last day of waiting for F. Boat. 'TAHUNA' found us in the morning. Crew are Gordon, Ray, John & Capt. Danny."

October 23, 1978: "TAHUNA left Euphoric at about 7:30—8:30 p.m. for Frisco Bay."

October 25, 1978: "2nd day TAHUNA left Euphoric for Frisco Bay to collect money & food."

. . . .

November 2, 1978: "TAHUNA was sighted in the afternoon. . . . Arrangement has been made for the cargo to be off loaded from Euphoric and that we shall receive our paycheck at port.

After loading TAHUNA left us about 12 midnite to 12:30 in the morning. No taking the complete load due to shortage of space and at the same she was overloaded.

* Received news that I shall together with the rest, each receive 4.0 Gs and that another job is waiting for us."

. . . .

November 6, 1978: "Arrived in Victoria at 6:15 a.m."

the dock, the vessel may not have actually begun to dock there until after October 22. Pell's statement was not offered as substantive proof that all of the details in Tan's diary are accurate but only to corroborate the accuracy of Russell's statements and the diary accounts of the transfer of marijuana to the *Tahuna* in early November. We believe that the district court was justified in relying on Pell's statement for its corroborative value.

The other piece of corroborative evidence included in the Petrotta affidavit was a statement by Parrick that he had observed the *Tahuna* at its dock on or about November 1, 1978, missing from its dock on November 2 and 3, and next at its dock on or about November 4, 5, or 6, 1978. New Approach disputed the corroborative value of Parrick's statement by submitting his deposition in which he states that he can no longer remember the exact dates the *Tahuna* was away from its dock or what he had said earlier to Petrotta, and that he could now only recall that the vessel was away from its dock sometime between November 1 and 15, 1978. It is understandable, however, that a witness deposed more than one year after the events in question would not recall details as precisely as he did in an interview only one month after the events. The discrepancy between what Petrotta said Parrick told him and Parrick's recollection a year later is certainly not sufficient to support New Approach's allegation that Petrotta deliberately and recklessly misstated or concocted Parrick's statement "in order to provide much needed corroboration."

New Approach also argues that the district court resolved uncertain questions of fact against it by not attempting to explain the "nautical riddle" of how the *Tahuna* could have made "the 500-mile round-trip to the Euphoric and also [have spent] two days with the Euphoric and still have only been away from its dock for precisely two days." Viewing the facts in the light most favorable to New Approach, there is no factual dispute due to Parrick's seeing the vessel again at its dock on November 4. New Approach conceded that the *Tahuna* could

make the 500-mile round trip in approximately 48 hours, or 24 hours each way. Assuming that Parrick observed the *Tahuna* at its dock at about 12:00 noon on November 1, the vessel still had more than 24 hours in which to make the trip and rendezvous with the *Euphoric* in the afternoon of November 2, as related by Tan's diary. If, as Tan's diary relates, the *Tahuna* left the *Euphoric* between 12 midnite and 12:30 in the morning of November 3, 1978, there was plenty of time for the *Tahuna* to make the return trip and be seen at its dock sometime during the following day, November 4. The solving of this so-called nautical riddle clearly was not a matter for trial, as New Approach alleges.

The district court concluded that even viewing Parrick's deposition in a light most favorable to New Approach, his statements, taken together with the reports of Russell, Tan and Pell, provided probable cause for initiation of forfeiture proceedings against the *Tahuna*. The district court decided that the testimony of DEA chemist Chan about the nature of the seeds seized by Petrotta during his inspection of the *Tahuna* was not necessary to its determination of probable cause and was not relevant to the question whether the *Tahuna* had been used to transfer marijuana over six months prior to seizure of the seeds. Therefore, it is unnecessary for us to reach the questions whether the evidence was seized during an illegal search and whether Chan's statement to Petrotta that the seeds resembled marijuana seeds was sufficiently reliable to be considered as part of the information supporting the government's probable cause determination.

■ We agree with the district court that the government's evidence was sufficient to support a showing of probable cause to institute the forfeiture proceeding. The affidavit prepared by Petrotta, relying on the mutually corroborating statements of Russell and Tan's diary, which are further corroborated by the statements of Pell and Parrick, is similar to the affidavit in *United States v. Lefkowitz, supra,* which

relied on corroborating reports from several informants:

> The affidavit here is replete with data indicating the informants' credibility: their information is firsthand, specific and highly detailed, thus it is "self-corroborating." ... Certain aspects of the information were independently corroborated by information already known to the [government]. ... The information was given to the [government] in circumstances subjecting the informants to *possible* personal or penal risk. ... In addition, [the informants'] stories corroborated each other.

618 F.2d at 1316 (citations omitted) (emphasis added); *see also United States v. Prueitt, supra,* 540 F.2d at 1005 (factors from which reliability can be verified include "reasonableness of the informant's access to accurate information regarding the suspect, independent corroboration of the informant's tip, and independent investigation including the probability, apart from the informant's tip, that the suspect possessed contraband"). The information on which the government relied was sufficient to warrant the belief by a reasonable person that the *Tahuna* was involved in smuggling marijuana into this country as alleged. We therefore hold that the government met its burden of showing probable cause to institute the forfeiture proceeding.

### IV

New Approach asserts as a final argument that even if the government's affidavit is facially sufficient to provide probable cause, it was entitled to an evidentiary hearing to attack the truthfulness of the underlying statements. It claims Petrotta acted in bad faith, primarily due to two discrepancies. The first pertains to Parrick's statement which we have already discussed. The second is a statement by Russell reported in the Petrotta affidavit in which Russell said that the *Tahuna* sailed "in a *westerly* direction toward San Francisco" (emphasis added). A vessel sailing in a westerly direction from a point off the California coast would be sailing toward Hawaii, not San Francisco. The district judge did not err in denying an evidentiary hearing based upon these alleged discrepancies.

In conclusion, New Approach has not succeeded in raising a genuine question as to any material fact concerning the government's showing of probable cause. Summary judgment was therefore appropriate. Fed.R.Civ.P. 56(e). Once the government has shown probable cause to believe a vessel was involved in transporting narcotic substances, the burden is on the owner of the vessel to prove that the vessel was not involved in the illegal activity alleged. 19 U.S.C. § 1615. This New Approach has failed to do. When an owner of a vessel introduces no evidence to prove that the vessel was not used for an illegal purpose, the government may obtain forfeiture solely upon the basis of its showing of probable cause. *United States v. One 1975 Ford F100 Pickup Truck,* 558 F.2d 755 (5th Cir.1977) (per curiam).

New Approach complains that the government's summary judgment motion was premature and that New Approach was not given ample time to meet its burden of proof. This argument may have aided New Approach had it been raised in the district court in a timely manner. New Approach did not move for a continuance; instead it chose to oppose the motion for summary judgment on the merits. New Approach cannot obtain relief now by arguing that it needed more time to develop its case. *THI–Hawaii, Inc. v. First Commerce Financial Corp.,* 627 F.2d 991, 994 (9th Cir.1980).

AFFIRMED.