**UNITED STATES of America, Plaintiff,**

v.

**ALL MONIES ($637,944.57) IN AC-COUNT NO. 29–0101–62 IN the NAME OF Sami Jabra ABUSADA and/or All Other Accounts and/or Joint Accounts and/or Safe Deposit Boxes of Sami Jabra Abusada, Citizens and Southern National Bank of Florida, Miami, Florida, Defendant.**

**Civ. No. 89–00386 DAE.**

United States District Court,
D. Hawaii.

May 29, 1990.

Daniel Bent, Florence T. Nakakuni, Office of the U.S. Atty., Honolulu, Hawaii, for plaintiff.

Hendrik Milne, Katherine Clark Silverglate, Squire Sanders & Dempsey, Miami, Fla., Brad Petrus, McCorriston Miho & Miller, Honolulu, Hawaii, for defendant.

## ORDER GRANTING CLAIMANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING CLAIMANTS' MOTION TO STRIKE THE AFFIDAVIT OF AGENT KEMPSHALL

DAVID A. EZRA, District Judge.

Claimants' motion for summary judgment and motion to strike the affidavit of Agent Richard Kempshall were heard by this court on May 14, 1990. The court, having reviewed the motions, memoranda and affidavits submitted in support of and in opposition to claimants' motions and having heard the oral argument of counsel, rules as follows:

### BACKGROUND

This action is one of 26 civil forfeiture actions brought in this district pursuant to 21 U.S.C. § 881(a)(6) which stem from the arrest and conviction of Emilio Melendez–Bernal ("Melendez").

Melendez was convicted of conspiring to import cocaine in excess of five kilograms into the United States in violation of 21 U.S.C. §§ 952(a) and 960 in September, 1989.

The government seized the defendant account as well as several others allegedly related to Melendez' drug trafficking operation, relying initially on the affidavit of Drug Enforcement Administration ("DEA") Special Agent Richard Kempshall ("the Kempshall affidavit") to satisfy its requisite showing of probable cause for forfeiture.

The following facts are set forth in the Kempshall affidavit:

Melendez was a target of undercover surveillance by DEA Agent Robert Aiu ("Aiu"), who posed as a buyer of multi-kilogram quantities of cocaine. Kempshall Affidavit at ¶ 5(c).

On April 29, 1989, Melendez, through a person known as Jose Rivera–Melendez ("Rivera–Melendez"), caused one kilogram of cocaine to be delivered to the hotel room of Agent Aiu's ostensible counterpart in Lima, Peru. *Id.* at ¶ 5(D). Prior to that date, Melendez had instructed a confidential informant to have Agent Aiu wire

$4,000.00 to an account in the Israel Discount Bank of Miami, Florida. *Id.* at ¶ 5(E). Aiu did so on April 21, 1989. *Id.* at ¶ 5(F). When Melendez met with this same confidential informant in Honolulu on April 26, 1989, Melendez informed him that he owned a money exchange business in Lima, Peru, in which he regularly handled large accounts of $300,000.00 to $400,000.00; that he had eight bank accounts in the United States; that two of his bank accounts, one in the U.S. and the other in Peru, had $1,000,000.00 in them; and that he used these accounts to receive and make payments in exchange for cocaine trafficking. *Id.* at ¶ 5(H).

Later that same day, Melendez met with Agent Aiu and informed him that he "normally has had money deposited in his bank accounts in payment for cocaine," and further that "he would have money wired from one bank to another, or otherwise transferred, because he preferred not to personally handle cash." *Id.* at ¶ 5(I). Melendez also informed Aiu that he had eight bank accounts in the United States and twelve elsewhere, and that he used these accounts "for drug payments, to launder money, and otherwise for his cocaine-trafficking business." *Id.* at ¶ 5(K)(4). He later told another DEA agent, Agent Ken Tanaka ("Tanaka"), that "he had banks in Miami as well as a bank in New York to launder his money." *Id.* at ¶ 5(L)(6).

Following delivery of the one kilo sample of cocaine to the hotel room in Lima, Peru on April 29, 1989, Melendez instructed Agent Aiu to deposit $120,000.00 "in several, but at least three of his ... accounts." *Id.* at ¶ 5(M). Soon thereafter, Rivera–Melendez was arrested in Lima and Melendez himself was arrested in Hawaii on drug conspiracy charges. *Id.* at ¶ 5(P).

On Melendez' person at the time of arrest was a deposit slip from Bank Leumi, Miami and some scraps of paper with three other accounts listed. *Id.*

On May 3, 1989, DEA Agent Keith Earnst in Lima provided Agent Aiu with information contained in Melendez's address book which had purportedly been seized by Peruvian officials at the premises of Melendez's money-exchange business, "Dirimex, S.A." *Id.* at ¶ 5(R). The address book contained two accounts in Melendez' own name; one in Texas and the other in Bank Leumi, Miami Beach. *Id.* On the basis of this information, DEA Agent Robert Martin obtained warrants to seize all of the listed accounts. *Id.* at ¶ 5(T). The defendant account in Citizens and Southern National Bank of Florida, Miami was one of the accounts listed in this address book.

The defendant account is in the name of claimant sami Jabra Abusada ("Abusada"). Abusada is a wealthy Peruvian who has been involved in the plastics business in Lima, Peru for over thirty years and, so far as the record before this court reflects, has never heard of Melendez until these proceedings. He owns a number of clothing and plastics factories in Lima, with combined annual sales in excess of $3,000,000. He used the exchange broker services of Mary Aguad[1] on four or five occasions after she offered to charge him a lower commission than he was currently paying through another broker, Hugo Delfino.

### PROCEDURAL HISTORY

Abusuda initially filed his motion for summary judgment on August 7, 1989 and oral argument was heard on October 16, 1989. The claimants argued that the government failed to establish probable cause for seizure or forfeiture, and even assuming there was probable cause, claimants argued that they had submitted unrebutted evidence establishing an innocent ownership defense. The government requested more time to conduct discovery pursuant to Fed.R.Civ.P. 56(f) and on December 14, 1989, this court granted the government's request and continued claimants' motion for 30 days.

On January 12, 1990, claimants filed a motion to strike the affidavit of Agent Kempshall asserting that it is misleading

---

1. The money exchange house, Dirimex, S.A., was also run by Mary Aguad (a.k.a. Luz Mary Aguad) and Maria Elena Sarria.

and unfair because the DEA knew at the time of applying for the seizure warrants that (1) the address book found at Dirimex, S.A. did not belong to Melendez, and (2) most of the names listed in the address book were names of legitimate customers of what they believed to be a legitimate business.

On May 10, 1990, Magistrate Bert Tokairin granted the government's motion to stay all civil proceedings in these forfeiture cases for thirty days.[2] The government based its motion to stay on the indictment of Melendez as well as the indictment of Jaime Ferreyra ("Ferreyra"). Ferreyra, a Peruvian attorney, is accused of tampering with a witness and attempting to obstruct justice in connection with many, if not all, of these civil forfeiture proceedings in violation of 18 U.S.C. § 1512(b) and (h). Allegedly, Ferreyra contacted Melendez, who is incarcerated in Florida, to persuade him to make a false written statement to help recover the accounts seized in these proceedings. The government argued that a stay was necessary in the interest of justice to prevent the criminal defendants from access to discovery in these civil proceedings which would hamper the related criminal proceedings.[3]

Claimants' motion for summary judgment is again before this court. The government opposes claimants' motion and again seeks a continuance pursuant to Fed. R.Civ.P. 56(f). Also before the court is claimants' motion to strike the affidavit of Agent Kempshall.

## DISCUSSION

### A. Standard for Granting Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law.

The moving parties have the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir.1987), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plaintiffs must show "the absence of a material and triable issue of fact," *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir.1987). In determining whether a genuine issue of material fact exists, the court should draw inferences from the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Perez v. Curcio*, 841 F.2d 255, 258 (9th Cir.1988).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Electrical*, 809 F.2d at 630.

In the instant case, the summary judgment rules must be "construed in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein." *U.S. v. One 56–Foot Yacht Named Tahuna*, 702 F.2d 1276, 1281 (9th Cir.1983) quoting *United States v. One 1975 Mercedes Benz 280S*, 590 F.2d 196, 199 (6th Cir.1978) (per curiam).

### B. Civil Forfeiture Standard

Pursuant to the civil forfeiture statutes, the government may forfeit mo-

---

2. This stay, however, does not operate to stay matters which are currently pending before this court, such as the instant motion.

3. Pursuant to 18 U.S.C. § 981(g) and 21 U.S.C. § 881(i), a stay is appropriate if the civil forfeiture cases are "related" to an underlying criminal indictment and there is "good cause" to enter the stay.

nies which were illegally furnished or intended to be furnished "in exchange for a controlled substance." 21 U.S.C. § 881(a)(6). The government bears the burden of establishing probable cause that the property subject to forfeiture is involved in an illegal drug-related transaction. *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir.1986); *see* 19 U.S.C. § 1615. Probable cause means that the government must have reasonable grounds to believe the property was related to an illegal drug transaction, supported by less than prima facie proof, but more than mere suspicion. *$5,644,540.00,* 799 F.2d at 1362. The government must rely on sufficiently reliable information to warrant a reasonable belief that the property is subject to forfeiture. *U.S. v. Dickerson,* 873 F.2d 1181,- 1185 (9th Cir.1988); *One 56–Foot Yacht Named Tahuna,* 702 F.2d at 1282. However, the government need not show that the evidence relied upon to establish probable cause is admissible pursuant to Fed.R. Civ.P. 56(e). *One 56–Foot Yacht Named Tahuna,* 702 F.2d at 1283.

■ Once the government establishes probable cause for forfeiture, the burden shifts to the claimant to prove by a preponderance of the evidence that the subject property is not forfeitable. *$5,644,540.00,* 799 F.2d at 1362.

## C. *Probable Cause to Seize*

■ In their motion to strike the affidavit of Agent Kempshall, claimants argue that the deposition testimony of DEA Agent Tanaka demonstrates there was no probable cause to seize the instant account at the time the seizure warrants were issued.

Melendez spoke in some detail with Agent Tanaka concerning his drug dealing operations while Tanaka was posing as a Japanese organized crime leader. Tanaka Deposition at 67. Tanaka, however, was not involved in preparing the seizure warrant. *Id.* at 97.

Through a confidential informant, Melendez told Tanaka that in a drug deal money would initially be deposited in one of Melendez's foreign accounts in Panama or Paraguay. *Id.* at 40. Melendez indicated that he would then transfer the money from Panama or Paraguay to one of his accounts in the United States. *Id.* at 42. Melendez mentioned two banks in Miami that he used in his drug laundering operations, Israel Discount Bank and Bank Leumi. *Id.* at 32. From their conversation, Tanaka understood that Melendez had a purportedly legitimate international money exchange operation which was run by others, as a front to launder his money. *Id.* at 71–72.

The laundering scheme, as Tanaka understood it based on Melendez' representations, involved wealthy Peruvians depositing money in Melendez' money exchange business for transfer to their U.S. bank accounts. *Id.* at 78. The exchange business would charge these customers a commission, then Melendez would dump "dirty money" from his U.S. bank accounts into the customers' "clean" U.S. bank accounts. *Id.* The exchange brokers would then reimburse Melendez in Peru with their customers' clean money. *Id.*

Based on the above testimony of Agent Tanaka, claimant argues that the government had no reason to doubt Melendez' account of his money laundering scheme and knew that any search of Dirimex, S.A. would produce lists of U.S. bank accounts of legitimate and wholly innocent exchange house customers.

Claimants argue that, at best, of the thirty-six accounts investigated, the government had probable cause to seize only 18: three which are clearly those of Melendez;[4] three which are suspect because the account holders are brokers at Dirimex, S.A. or their relatives;[5] three

---

**4.** Two accounts are in his name—one in Texas and one in Bank Leumi, Miami. Kempshall Affidavit at ¶ 5(R). The third unnamed account is linked to Melendez by a deposit slip which was found on his person at the time of arrest. *Id.* at ¶ 5(P)(4).

**5.** These are accounts held by (1) Maria Elena Sarria at the Israel Discount Bank, Miami; (2) Julio Aguad and Luz Mary Aguad at City Bank of Miami; and (3) Maria Estrella Aguad at City Bank of Miami.

which are suspect because Melendez was carrying details of the accounts on his person; one which is suspect because it was in Bank Leumi, Miami, a bank specifically mentioned by Melendez; and seven others which are vaguely suspicious because they are in Israel Discount Bank, New York, a branch related to a bank specifically mentioned by Melendez.

In sum, claimants contend that the government had cogent evidence available to it which negated any probable cause to forfeit the subject accounts. Therefore, claimants argue that the Kempshall affidavit should be stricken in its entirety, and essentially re-written to include the omitted matter which casts doubt on the government's showing of probable cause at this time.

While the court does not find the Kempshall affidavit should be stricken in its entirety, the court considers claimants' arguments as providing further indication that the government lacked probable cause to seize the defendant account.

 The testimony of Agent Tanaka and the testimony of Agent Earnst create a serious question as to whether the government had reason to believe, at the time of seizure, that the address book belonged to Melendez or the accounts listed in the address book held funds controlled by Melen-

dez or were related to his drug trafficking.[6] The deposition testimony of Agent Tanaka indicates that the government may have had some reason to suspect that Melendez was using his money exchange business to launder money. The government, however, seized all of the subject accounts and commenced these forfeiture proceedings asserting that all of the accounts were proceeds or funds involved in an illegal drug-related transaction. None of the evidence, however, indicated that the defendant account in particular was anything but an account belonging to a legitimate customer legally utilizing the exchange brokerage services of Dirimex, S.A.

Based on all the evidence presented, this court finds that, at the time of seizure, the government did *not* have probable cause to forfeit the Abusada account.

The government, however, argues that even if it did not have probable cause to forfeit the monies at the time of seizure, it has now established probable cause to forfeit the account.

 An illegal seizure will not preclude forfeiture if the government can establish probable cause for forfeiture with untainted evidence. *U.S. v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1146 (9th Cir. 1989); *United States v. One 1977 Mercedes*

6. On March 5, 1990, Chief Judge Harold M. Fong granted summary judgment in favor of claimant Henry Feiger in the related civil forfeiture proceeding, *United States v. All Monies ($76,285.91) in Account No. 95–9411–6, in the Name of Henry Feiger, Israel Discount Bank, New York, New York*, Civ. No. 89–00471 HMF ("the Feiger case"). Judge Fong held that the government failed to establish probable cause for forfeiture based on facts almost identical to those present in the instant case. *See id.*, Order Granting Claimant's Motion for Summary Judgment, filed March 5, 1990. In so holding, Judge Fong reconsidered and distinguished his previous finding of probable cause in *United States of America v. All Monies ($572,426.62), in Account No. 2785800–1 in the Name of Wadi Kahhat, Lloyds Bank, Miami, Florida*, Civ. No. 89–00387 HMF, based on additional evidence which had since come to light.

Insofar as the affidavit which formed the basis of the seizure of the Feiger account was identical to that which formed the basis of the seizure in this case, the court agrees with Judge Fong's analysis and conclusion that the govern-

ment lacked probable cause to seize the accounts. *Id.* In fact, there is an even weaker showing of probable cause with respect to the instant account than with respect to the Feiger account. The Feiger account was in the Israel Discount Bank, New York. Melendez actually mentioned that he used the Israel Discount Bank, Miami to further his drug activity. There is no evidence that Melendez ever mentioned using the Citizens and Southern National Bank of Florida, Miami or any branch related to that bank.

The government has moved for reconsideration in the Feiger case based on additional evidence also presented to this court concerning the address book. The government now argues that it has evidence indicating that the address book was the joint property of Melendez, Aguad, and Sarria and it was found at Dirimex, S.A. The government, however, relies on evidence discovered post-seizure, through information provided by other claimants as a result of these improvidently instituted proceedings. This court finds that such evidence cannot be used to establish that there was probable cause to seize the accounts in the first place.

*Benz,* 708 F.2d 444, 450 (9th Cir.1983). The improper seizure, however, works to prevent the government from introducing any evidence gained by its unlawful seizure. *U.S. v. Property at 4492 S. Livonia Rd.,* 889 F.2d 1258, 1265–66 (2d Cir.1989).

The government contends that the evidence obtained from bank records is "untainted" evidence demonstrating probable cause to forfeit. The government has also moved for leave to amend its complaint to assert violations of the money laundering statute as an alternative basis for forfeiture.[7] The government alleges that it now has evidence that Melendez, together with Maria Elena Sarria, ("Sarria") were laundering money through three bank accounts, the "Eurosport Account," the "Escorpio Account" and the "Gafrur Account." The government has bank records showing transfers from the Eurosport Account to the defendant account.[8] *See* Declaration of Keith Francis. The government also asserts that the bank record evidence establishes probable cause for forfeiture and creates genuine issues of material fact with respect to claimants' innocent ownership defense.

Claimants object vigorously to the amendment of the complaint to allege this new theory for forfeiture, arguing that the government knew of Melendez' alleged money laundering scheme when it began these proceedings and cannot now change its theory in order to justify the improperly commenced suit. Claimants further argue that the government does not have probable cause to forfeit this account based on the money laundering statutes.

Because the court finds that summary judgment should be granted in this case based on the merits of claimants' innocent ownership defense, the court need not resolve the issue of probable cause to forfeit at this time. The court is concerned, however, about the government's change of theories midstream in this litigation based on its developing theory of probable cause.[9]

D. *The Merits*

Assuming without deciding, that the government has properly established probable cause to forfeit this account, the court finds, based on the merits of claimants' innocent ownership defense, that summary judgment should be granted.

 Pursuant to the forfeiture statutes, after the government meets its initial burden of establishing probable cause, the claimant must come forward with evidence establishing his innocence by a preponderance of the evidence. *$5,644,540.00,* 799 F.2d at 1362. Although the government may rely on hearsay and other inadmissible evidence to demonstrate probable cause, once the merits are reached, the government may not rely on inadmissible evidence. *One 56–foot Yacht Named Tahuna,* 702 F.2d at 1283–84; *U.S. v. Property Known as 6109 Grubb Road,* 886 F.2d 618, 622 (3rd Cir.1989) (government's use of deposition testimony to rebut claimant's innocent owner defense was improper although it might be used to establish probable cause.)

The parties dispute what type of showing the claimants must make before the

---

**7.** Pursuant to 18 U.S.C. § 981, property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, the money laundering statute, is subject to forfeiture.

**8.** The government has evidence indicating that a total of $225,051.88 was transferred from the Eurosport Account to the defendant account in July and August 1988. The government also has evidence that an additional $75,000 was transferred from an account held by Sarria to the defendant account.

**9.** The defendant account was seized over one year ago. The record indicates that if the government had reason to believe that Melendez was allegedly laundering funds through the de-

fendant account, that knowledge existed at the time the complaint was filed based on Melendez' representations. The government, however, seized the defendant account based on an entirely different theory, which the court has now determined is untenable with respect to the instant case. In light of the length of time the government has had to proceed in this matter, the information it had available to it from the outset, and in view of this court's position with respect to the government's probable cause to seize the account in the first instance, this court questions whether leave to amend to assert money laundering would be either justified or helpful to the government's case in this instance.

**1440**

government must come forth with admissible evidence, pursuant to Fed.R.Civ.P. 56(e), to rebut claimants' showing. The government asserts, in light of the burden-shifting provided for in the civil forfeiture statute, that claimants must establish their innocent ownership defense by a preponderance of the evidence before the government must rebut claimants' showing with admissible evidence.

The court has found no cases which address how the shifting of the burden of proof in civil forfeiture cases impacts the standard to be applied in summary judgment proceedings. However, assuming for purposes of this motion, that the government's position is correct, the court finds that the claimants have adequately established their innocent ownership defense by a preponderance of the evidence.

Claimants have produced unrefuted business records which indicate that the transfers into their account were made by the claimants through what they believed to be a legitimate money exchange house and by declaring under oath that they had no knowledge of Melendez or his illegal drug trafficking operation.

The government asserts that it has raised genuine issues of material fact by submitting the declarations of Keith Francis ("Francis") and William Helton ("Helton"). Francis, an Intelligence Analyst with the DEA, and Helton, a contract computer analyst with the Department of Justice, summarized numerous bank records related to these proceedings. These records supposedly suggest that a money laundering operation was taking place because there were transfers between the Eurosport Account allegedly controlled by Melendez and the defendant account.

The government's argument fails for two reasons. First, the evidence submitted does not meet the requirements of Rule 56(e).[10] The affidavit of Kempshall, while admissible to demonstrate probable cause, is not based on personal knowledge and is

not admissible for purposes of rebutting the claimants' argument on the merits. *See One 56–foot Yacht Named Tahuna,* 702 F.2d at 1283–84; *Property Known as 6109 Grubb Road,* 886 F.2d at 622. Also, the bank record evidence, introduced second hand through the affidavits of government analysts, is likely inadmissible as well.

Second, even if this court considered the bank record evidence as admissible, it does not raise a genuine issue of material fact with respect to the claimants' knowledge of either illegal drug transactions or money laundering. On the contrary, the evidence is completely consistent with claimants' defense, that claimants used the exchange brokerage services of Mary Aguad to make international money transfers to the United States. With respect to the $225,051.88 which the government asserts was transferred between the Eurosport Account and the defendant account in July and August, 1988, claimants present evidence that they withdrew $282,730.00 from their own domestic Peruvian bank accounts for transfer to the United States during that period of time.

Viewing the evidence in a light most favorable to the government after allowing the government approximately one year to accumulate evidence, the court finds that the government still presents no probative evidence which raises a genuine issue of material fact as to the claimants' knowledge which would refute claimants' showing on the merits. The government has attempted to utilize its "mere suspicion" in place of admissible evidence. This does not meet the standard required by law.

In summary, the government has presented no evidence which indicates the claimant either knew *or* consented to any illegal activity taking place with respect to the defendant account. *See United States v. One Parcel Of Land, Known as Lot 111–B,* 902 F.2d 1443 (9th Cir.1990). Accordingly, the court finds that no genuine issues of material fact exist with respect to claimants' innocent ownership defense.

**10.** Fed.R.Civ.P. 56(e) provides in part as follows: Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

E. *Rule 56(f) Continuance*

The government seeks yet another continuance of this motion for summary judgment pursuant to Fed.R.Civ.P. 56(f). "A Rule 56(f) request must demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *U.S. v. $5,644,540.00 in U.S. Currency,* 799 F.2d at 1363.

In light of this court's posture with respect to the probable cause for seizure issue and the merits, the court finds that further continuance is unwarranted and inappropriate.

The government seized the defendant account over one year ago. The government has been given ample opportunity to present a case for forfeiture, despite the lack of probable cause for the initial seizure. Extensive and costly discovery has been undertaken by both the government and the claimants.

The government asserts that it is receiving still more bank records and needs more time to digest this evidence. This court is not convinced that further bank records, obtained through discovery related to this improvidently seized account, will demonstrate that the defendant account is subject to forfeiture. Furthermore, the court finds that it is unjust and inequitable to continue to allow the government an unfettered fishing expedition in order to come up with evidence to justify forfeiture.

The court also is not persuaded that a continuance is necessary in order to further depose claimant Abusada. Abusada has been extensively deposed and has unequivocally disavowed any knowledge of Melendez or his drug operations. There is no reason to believe that he will change his testimony or reveal anything new which will create a reason to believe that his account is subject to forfeiture.

Finally, with respect to the allegedly related criminal matter, based on all the evidence presented in this case, the court finds no reason to believe that the testimony of the newly-indicted Jaime Ferreyra will create any genuine issues of material fact with respect to claimants' showing on the merits.

Therefore, considering the record and arguments presented, the court finds that a continuance pursuant to Rule 56(f) is unwarranted and DENIES the government's request.

CONCLUSION

Therefore, for the reasons stated above, the court finds that the government has failed to raise any genuine issue of material fact with respect to claimants' innocent ownership defense. Accordingly, the court GRANTS claimants' motion for summary judgment, DENIES claimants' motion to strike the affidavit of Agent Kempshall and DENIES the government's request for a Fed.R.Civ.P. 56(f) continuance.

Further, the court hereby ORDERS the United States to release all moneys presently held in the defendant account to the claimants within thirty (30) days of the filing of this order unless the United States Court of Appeals for the Ninth Circuit has issued a stay pursuant to its rules and ordered the account proceeds to continue to be held by the government pending appeal.

IT IS SO ORDERED.