UNITED STATES of America, Plaintiff,

v.

ONE 1976 LINCOLN CONTINENTAL MARK IV, VEHICLE IDENTIFICATION NUMBER 6Y89A900836, Defendant,

and

William R. Picozzi, Party in Interest.

Civ. A. No. 83–2391.

United States District Court, S.D. West Virginia, Charleston Division.

Feb. 8, 1984.

Larry R. Ellis, Asst. U.S. Atty., Charleston, W.V., for plaintiff.

J. Stephen Max, Charleston, W.V., for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

In this action,[1] the Government is seeking the forfeiture of a 1976 Lincoln Continental Mark IV, which is owned by William R. Picozzi, on two grounds. First, the Government alleges that the vehicle is forfeited to the United States, pursuant to 49 U.S.C. § 782,[2] inasmuch as Picozzi's son used it to transport cocaine, a controlled substance,[3] in violation of 49 U.S.C. § 781.[4]

---

1. The Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 1345 and 1355.

2. 49 U.S.C. § 782 provides in pertinent part as follows:

   "Any ... vehicle ... which has been ... used in violation of any provision of section 781 of

this title, or in, upon, or by means of which any violation of said section has taken ... place, shall be seized and forfeited ...."

3. Cocaine is a Schedule II, 21 U.S.C. § 812(b)(2), narcotic controlled substance as designated by the Attorney General in 21 C.F.R. § 1308.-12(b)(4), pursuant to 21 U.S.C. § 811.

Second, the Government maintains that the conveyance is forfeited to the United States, pursuant to 26 U.S.C. § 7302,[5] inasmuch as Picozzi's son, a retail liquor dealer as defined by 26 U.S.C. § 5122(a), also used the car to transport distilled spirits which he had purchased for resale from someone other than a wholesale liquor dealer who paid the occupational tax which is imposed by 26 U.S.C. § 5111(a), in violation of 26 U.S.C. § 5117(a).[6] Picozzi has filed a timely claim to the vehicle and an answer to the Government's complaint, wherein he alleges that he was "merely an innocent bystander" who "had no knowledge, information, or involvement in" his son's violations of the federal narcotic and revenue laws. Currently pending before the Court is the Government's motion for summary judgment, pursuant to *Rule* 56(a), Federal Rules of Civil Procedure.[7] For the reasons set out below, the Court hereby grants [8] the aforementioned motion, filed September 28, 1983.

## I. *Probable Cause*

In support of its motion for summary judgment, the Government has submitted the uncontroverted affidavit of Gary T. Sheridan,[9] a Special Agent with the Bureau of Alcohol, Tobacco and Firearms, which clearly establishes probable cause [10] to believe that Picozzi's vehicle was unlawfully used by his son on January 27, 1983, to transport two bags of cocaine and several cases of illegally purchased liquor and, accordingly, warrants granting the Govern-

The Government further alleges that Picozzi's son transported the cocaine with the unlawful intent to distribute it, in violation of 21 U.S.C. § 841(a)(1).

4. 49 U.S.C. § 781 provides in pertinent part as follows:
"(a) it shall be unlawful (1) to transport ... any contraband article in ... or by means of any ... vehicle ..., (2) to conceal or possess any contraband article in ... any ... vehicle; or (3) to use any ... vehicle ... to facilitate the transportation ... concealment, receipt, possession, sale, barter, exchange or giving away of any contraband article.
(b) as used in this section, the term 'contraband article' means (1) any narcotic drug which has been or is possessed with intent to sell or offer for sale in violation of any laws or regulations of the United States dealing therewith, or which has been acquired or is possessed ..., in violation of any laws of the United States dealing therewith...."

5. 26 U.S.C. § 7302 provides in pertinent part as follows:
"It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations proscribed under such laws, or which has been so used, and no property rights shall exist in any such property."

6. 26 U.S.C. § 5117(a)(1) provides that:
"It shall be unlawful for any dealer to purchase distilled spirits for resale from any person other than ... a wholesale dealer in liquors who has paid the special tax as such dealer to cover the place where such purchase is made ...."

7. The Court has deemed the Government's motion which has been pending for some four

months, to be ripe for decision, notwithstanding the fact that the counseled claimant has not responded to it. In doing so, the Court would note that it is well settled in this circuit, that on a motion for summary judgment, the nonmoving party:
" '[M]ay not rest upon the mere allegations or denials of his pleading, but his response by affidavits or as otherwise provided in [*Rule* 56], must set forth specific facts showing that there is a genuine issue for trial.' "
*Hoyle v. Southern Bell Telephone and Telegraph Co.,* 474 F.Supp. 1350, 1353–54 (W.D.N.C.1979) *affirmed* 631 F.2d 728 (4th Cir.1980), *quoting White v. Boyle,* 538 F.2d 1077, 1079 (4th Cir. 1976). *Accord, Kirkland v. Cooper,* 438 F.Supp. 808 (D.S.C.1977).

8. "This Court will grant summary judgment 'only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law ... and the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence.' "
*Prete v. Royal Globe Ins. Co.,* 533 F.Supp. 332, 333 n. 2 (N.D.W.Va.1982) (citations omitted).

9. *See* Exhibit A, attached to the Government's memorandum in support of its motion for summary judgment.

10. "The determination of probable cause in a forfeiture proceeding simply involves the question whether the information relied on by the government is adequate and sufficiently reliable to warrant the belief by a reasonable person that the ... [vehicle] was used to transport controlled substances."
*U.S. v. One 56-foot Motor Yacht Named Tahuna,* 702 F.2d 1276, 1282 (9th Cir.1983).

ment's motion for summary judgment, and concomitantly the forfeiture of the conveyance: Provided, that there is not a disputed issue of fact as to whether Picozzi's son had used the vehicle without his father's consent, nor as to whether Picozzi had done all that reasonably could have been expected of him to prevent his son's unlawful use of the car.

## II. *The Rule of Calero-Toledo*

In *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court rejected an innocent lessor's due process challenge to the seizure and forfeiture of a pleasure yacht which it had leased to two individuals who were subsequently found to have had marijuana on board. In doing so, the Supreme Court reasoned that the:

> "Forfeiture of conveyances that have been used—and may be used again—in violation of the narcotic [and revenue] laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable .... To the extent that such forfeiture provisions are applied to ... bailors ... who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property."

*Id.* at 686–88, 94 S.Ct. at 2093–94. After *Calero-Toledo*, therefore, it is apparent that an "innocent" bailor, such as Picozzi, cannot avoid the " 'broad sweep' of forfeiture statutes," unless he can prove that either the conveyance "had been taken from him without his privity or consent," or "not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." *Id.* at 688–89, 94 S.Ct. at 2094–95.

With respect to these issues, the claimant's deposition testimony provides as follows:

"Q. Now, is it your testimony that your son, in fact, maintained custody of the car, even though the title was in your name?

A. Yes. He used it, mostly, and I would take it once in a while myself. In fact, I took it to Florida with me to visit my brother and sister down in Fort Lauderdale.

Q. How often did you use the car between 11–26–76—

A. Just occasionally.

Q. Okay. Did your son need your permission to obtain the car?

A. Well, he had it, mostly. I don't give any permission. When my kids want something, it's there; they don't have to ask me for it.

Q. Did William A. Picozzi [the offending son] have to ask you before he could come over and get the car or use the car?

A. Well, he mostly had it at his place.

Q. And where was he residing at this time?

A. He was residing up in South Charleston.

Q. Mr. Picozzi, to your knowledge, did your son, William A. Picozzi, deal in drugs prior to the incident that resulted in his plea of guilty?

A. I knew nothing about it, no knowledge.

Q. Did you have any knowledge, whatsoever, of the events that occurred on January 27, 1983, in connection with your son distributing cocaine to an undercover DEA agent?

A. No.

Q. Were you involved at all in the transfer of those drugs from your son to the agent?

A. No, ma'am.

Q. Did your son have his own set of keys to the 1976 Lincoln?

A. Yes, ma'am.

       *       *       *       *       *       *

Q. You know, do you not, that your son, William A. Picozzi, pled guilty to one count of distributing cocaine in January of 1983 to an ATF agent?

A. Yes, ma'am.

Q. You know that your son traded the cocaine for liquor on the 27th day of January, 1983?

A. I do today, yes.

\* \* \* \* \* \*

Q. What, if anything, did you ever do to prevent your son from using your car, the car which was in your name, according to the title, illegally?

A. I never knew he was doing anything illegally.

Q. Did you take any steps to prevent the car from being used illegally?

A. I didn't know of any illegal incidents."

Deposition of William R. Picozzi, pp. 8–10, filed October 17, 1983.

After having reviewed the above quoted deposition testimony, the Court finds that the claimant, who gave his son unbridled access to his vehicle, has neither raised any genuine issues of fact as to whether his son was using the conveyance without his consent on January 27, 1983, when he transported cocaine and illegally purchased liquor in it, nor as to whether he did all that reasonably could have been expected of him to prevent his son's proscribed use of the car. Accordingly, the Court hereby grants the Government's motion for summary judgment and decrees that Picozzi's 1976 Lincoln Continental Mark IV is forfeited to the United States, pursuant to 49 U.S.C. § 782 and 26 U.S.C. § 7302. While this result is undoubtedly severe, "severe laws are rendered necessary to enable the executive to carry into effect the measure of policy adopted by the [Congress in the federal narcotic and revenue laws]." *Calero-Toledo v. Pearson Yacht Leasing Co., supra,* at 685 n. 24, 94 S.Ct. at 2092 n. 24.