799 F.2d 1357
 7 Fed.R.Serv.3d 282
 UNITED STATES of America, Plaintiff-Appellee,
v.
$5,644,540.00 IN U.S. CURRENCY, 450 One-Ounce Gold Canadian
Maple Leaf Coins, 500 One-Ounce Platinum Ingots, Defendants,
and
Kenneth Cory, Controller, etc., California Franchise Tax
Board, Ann Smith Kamali, Nelson Garrett, Douglas
Stavoe, and Pearl Lampros, Claimants- Appellants.
 Nos. 85-1976, 85-2069, 85-2075, 85-2084 and 85-2085.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 13, 1986.
Decided Sept. 16, 1986.
 
 1
 Sanford Svetcov, Dennis Michael Nerney, Asst. U.S. Attys., San Francisco, Cal., for plaintiff-appellee.
 
 
 2
 Robert E. Murphy, Deputy Atty. Gen., San Francisco, Cal., for defendants and Cory.
 
 
 3
 Frederick P. Furth, Thomas R. Fahrner, Michele C. Jackson, Dwayne L. Abbott, Furth, Fahrner, Bluemle & Mason, San Francisco, Cal., for claimants-appellants Kamali and Garrett.
 
 
 4
 Philip Farley, Franchise Tax Bd., Sacramento, Cal., for claimants-appellants.
 
 
 5
 John H. Boone, San Francisco, Cal., for claimant-appellant Stavoe.
 
 
 6
 Law Offices of Melvin M. Belli, Sr., Constance R. Fraenkel, Paul M. Monzione, Philip L. Stimac, San Francisco, Cal., for Lampros.
 
 
 7
 Appeal from the United States District Court for the Northern District of California.
 
 
 8
 Before ALARCON and WIGGINS, Circuit Judges, and STEPHENS*, Senior District Judge.
 
 STEPHENS, Senior District Judge:
 
 9
 The claimants of the res consisting of $5,644,540.00 in U.S. currency, 450 one-ounce gold coins, and 500 one-ounce platinum ingots appeal from a summary judgment forfeiting the property to the government. We affirm.
 
 I. FACTS
 
 10
 Claimants Ann Smith Kamali and Nelson Garrett were supervisory employees of Budget Rent-A-Car at its San Francisco airport office. In early October 1984, Kamali commenced a search for a 1984 white Ford Tempo automobile, which was considered missing from Budget's inventory although the extended rental contract had an expiration date of October 22, 1984. A deputy sheriff had told Kamali that he had seen the car in an airport parking lot.
 
 
 11
 On October 10, 1984, Kamali asked Garrett to look in the airport parking lot for the car, but he was unable to find it. On October 23, 1984, Kamali again requested that Garrett look for the car. He located it in the parking lot and tried to start the car after obtaining the keys, but was unable to do so. He returned to Budget's office, and then he and Kamali drove another car to the parking lot to retrieve the Ford Tempo. They were able to start the Ford and drove both cars back to the Budget office.
 
 
 12
 Kamali attempted to contact the individual who had rented the car by dialing the phone numbers listed on the rental documents. She reached an answering service and a Marin County motel, but was unable to reach the renter. On that same afternoon, she drove the Ford Tempo to lunch. As she was leaving the Budget parking lot, she stopped to go through a routine security check. Security Guard Pearl Lampros, who is another claimant, opened the trunk, and they both saw luggage and other packaged items in it.
 
 
 13
 Kamali returned from lunch in the same car and drove to the back door of the Budget office in order to unload the contents of the trunk. Because the luggage was very heavy, she requested Garrett's help. The trunk contained, among other things, two unlocked duffel bags, two locked, vinyl suitcases, and a cardboard box. Kamali opened one of the duffel bags and discovered that it was filled with U.S. currency. Kamali and Garrett then opened the other duffel bag which also contained U.S. currency. The cardboard box contained gold coins and platinum bars.
 
 
 14
 Kamali contacted the San Mateo Sheriff's office, and two detectives arrived at the Budget office shortly thereafter. The detectives took custody of all of the contents of the trunk of the Ford Tempo. After reviewing the situation, the sheriff's detectives contacted the Drug Enforcement Administration (DEA), and two agents arrived later and seized and removed all of the property pursuant to 21 U.S.C. section 881(a)(6).
 
 
 15
 The next day, October 24, 1984, one of the DEA agents, Fiorentino, presented an affidavit for a search warrant to a federal magistrate who issued a warrant authorizing Fiorentino to search the two locked suitcases, which had been found in the trunk. The affidavit recited that DEA agents had counted approximately $1.4 million in $50 and $100 bills in the two duffel bags and that the gold coins and platinum ingots found were valued in excess of $600,000. A previously reliable dog trained to identify narcotics "alerted" on both of the suitcases found in the car, each of which had been placed in line with other pieces of luggage. The missing car had been rented by a person giving his address as Miami, Florida, a known source city for cocaine. The renter's local residence proved to be a Marin County motel which DEA agents knew had been used in the past for drug trafficking. The renter had not been registered there for five months. The car had been rented on August 9, 1984, was renewed twice by telephone, and the rental contract was to expire on October 22, 1984.
 
 
 16
 The two suitcases were opened and searched pursuant to the warrant on October 24, 1984. One suitcase contained 100 pounds of $100 bills, amounting to $4 million, and the other contained three shopping bags of currency in $100, $50, $20 and $10 denominations, totalling $245,540. When the suitcase containing the shopping bags was opened, the agents detected the odor of processed cocaine, and after removing the money, they saw flakes of white powder in the top and bottom sections of the liner. A DEA chemist confirmed that the substance was cocaine; fifteen milligrams were recovered from the suitcase.
 
 
 17
 After further investigation, DEA agents discovered that the person who rented the car on August 9, 1984, had used a fraudulent Florida driver's license and gave a false name and address in Miami. The occupant of the residence address given in Miami did not know the individual who had rented the car, but had returned mail that had been addressed to him at the house to the post office.
 
 
 18
 The suspect had opened a mail and telephone answering service in Marin County on January 1, 1984, listing a Delaware corporation as his business address and using another identity. The corporation's address turned out to be a vacant lot in San Antonio, Texas. The suspect also used a false social security number to obtain a Visa credit card. His Visa records disclosed that he had travelled by car from Miami to the Atlanta airport for a flight to the West Coast. This was consistent with the practice of cocaine dealers seeking to avoid the high level of police supervision at the Miami airport.
 
 
 19
 The suspect, using yet another false name, traded 500 gold coins for 500 platinum ingots at a coin shop in southern California on July 5, 1984. The coin dealer identified a photograph of the suspect obtained from the fraudulent Florida driver's license. The identity of the suspect became known to the government through the persons mentioned above. He is not in custody.
 
 II. PROCEDURAL HISTORY
 
 20
 On October 25, 1984, the government filed a civil complaint for forfeiture of $5,644,540 in cash, 450 one-ounce gold coins, and 500 one-ounce platinum ingots. The government alleged that the res was involved in a cocaine transaction. Notice by publication was executed on November 15, 1984.
 
 
 21
 In November and December 1984, claimants Kamali, Garrett, Lampros, Kenneth Cory, Controller of the State of California, and the California Franchise Tax Board all filed timely answers. The district court treated a motion to intervene by Lampros as a timely claim. Claimant State Controller Cory alleged that the res is unclaimed property and as such should escheat to the state under California Code of Civil Procedure section 1520. Claimants Kamali, Garrett and Lampros alleged that they are finders of lost property under California Civil Code section 2080, et seq. Claimant Franchise Tax Board asserted that eleven percent, or $657,711.00 in California income tax is due on the res. Claimant Douglas Stavoe, another Budget employee, filed an untimely claim and answer as a finder on February 5, 1985. The sole basis for his claim is his allegation that he saw the Tempo automobile in an airport parking lot on October 15, 1984, and reported the sighting to his supervisor in a written inventory of missing cars.
 
 
 22
 Budget Rent-A-Car also filed a timely claim, alleging that it was a finder and possessor of the res.[1] In February 1985, Budget filed interrogatories and a request for production of documents and noticed the depositions of two DEA agents and the DEA chemist. Between November 1984 and March 1, 1985, no other claimant sought discovery.
 
 
 23
 On March 1, 1985, the government moved to stay discovery and also moved for summary judgment. The affidavit of DEA Agent Fiorentino supporting the motion for summary judgment was offered to establish probable cause that the money had been used in an illegal drug transaction and was filed under seal to protect the criminal investigation.
 
 
 24
 Claimants filed memoranda in opposition to summary judgment, but only claimants Kamali and Garrett filed affidavits pursuant to Federal Rule of Civil Procedure 56(f) seeking a continuance to permit discovery until the completion of the criminal investigation.
 
 
 25
 On April 22, 1984, the district court decided that the government had demonstrated probable cause that the res had been involved in a drug transaction. The court denied discovery and a continuance and granted the government's motion for summary judgment. Claimant Stavoe's claim was dismissed as untimely. Appellants challenge the district court's order granting summary judgment to the government and denying a continuance to permit discovery.
 
 III. JURISDICTION
 
 26
 At the outset, we must determine whether we have jurisdiction over this appeal. Federal Rules of Civil Procedure 54(b) provides that a judgment on fewer than all claims does not terminate the action as to any of the parties unless the court certifies the judgment for appeal. Without such a certification, the judgment is generally not appealable. See Lockwood v. Wolf Corp., 629 F.2d 603, 608 (9th Cir.1980). When the district court ruled on the summary judgment motion, it did not mention Cory's counterclaim against Budget and cross-claims against Budget, Kamali, Garrett, and Lampros.[2] The district court also did not issue a Rule 54(b) certification. This jurisdictional issue must be decided before proceeding.
 
 
 27
 Despite the absence of a reference to Cory's counterclaim and cross-claim, it does not appear that the district court was attempting to dispose of fewer than all the pleaded claims. The forfeiture of the property to the government effectively disposed of Cory's claims against Budget, Kamali, Garrett, and Lampros. Any dispute among these claimants regarding the property was rendered moot by the forfeiture of the property to the government. As a practical matter the district court's order was a final judgment and jurisdiction of this appeal may be entertained. See Lockwood, 629 F.2d at 608. The other issues of appeal are now considered.
 
 IV. DISCUSSION
 A. Standard of Review
 
 28
 The district court's ruling on the Rule 56(f) request is reviewed under the deferential abuse of discretion standard. Foster v. Arcata Associates, Inc., 772 F.2d 1453, 1467 (9th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 1267, 92 L.Ed.2d ---- (1986). The entry of summary judgment is reviewable de novo. Allen v. A.H. Robins Co., Inc., 752 F.2d 1365, 1368 (9th Cir.1985).
 
 
 29
 We turn first to the summary judgment issue. "Although we evaluate every summary judgment by viewing the evidence and the inferences therefrom in the light most favorable to the party opposing the motion, ... the '[s]ummary judgment procedures under Rule 56, Fed.R.Civ.P., must necessarily be construed in the light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein....' " United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1281 (9th Cir.1983) (citations omitted).
 
 
 30
 This forfeiture was instituted pursuant to 21 U.S.C. section 881, which empowers the government to seize property exchanged for or intended to be exchanged for illegal controlled substances.[3] By virtue of 21 U.S.C. section 881(d),[4] the burden of proof in this action is controlled by 19 U.S.C. section 1615.[5] Under 19 U.S.C. section 1615, the government initially must demonstrate probable cause to believe that the property was involved in an illegal drug-related transaction. If the government does so, the burden is on the claimant to show by a preponderance of the evidence that the property was not involved in a violation of the narcotics laws or to refute the government's showing of the requisite probable cause. Tahuna, 702 F.2d at 1281.
 
 
 31
 An unrebutted showing of probable cause to believe that the property was exchanged for or intended to be exchanged for illegal controlled substances is sufficient by itself to warrant a forfeiture. See id.; accord United States v. Little Al, 712 F.2d 133, 136 (5th Cir.1983) ("If unrebutted, a showing of probable cause alone will support a forfeiture.") To meet its burden, the government must show that it had reasonable grounds to believe that the property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion. Tahuna, 702 F.2d at 1282.
 
 B. Claims of Kamali and Garrett
 
 32
 Appellants Kamali and Garrett argue that wholly inadmissible evidence may not support a forfeiture of the property to the government. The government's showing of probable cause was dependent upon the Fiorentino affidavit, which Kamali and Garrett claim is inadmissible hearsay. This same argument was raised by the appellant in Tahuna, and the court flatly rejected it. The government's showing of probable cause and the resulting civil forfeiture may be based on otherwise inadmissible hearsay.
 
 
 33
 Kamali and Garrett next argue that the government must show a "substantial connection" between the forfeited property and the illegal activity. They base this argument on the use of the phrase "substantial connection" in the legislative history. See Joint Exploratory Statement of Titles II and III of the Psychotropic Substances Act of 1978, Pub.L. No. 95-633, 92 Stat. 3768 (codified in various sections of 18 and 21 U.S.C.), reprinted in 1978 U.S. Code Cong. & Ad. News 9496, 9518, 9522. Although we believe that the government has established probable cause and more, we decline to read a "substantial connection" requirement into the forfeiture statute. The Eleventh Circuit addressed this identical issue in United States v. Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d 895 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986), and likewise refused to impose a "substantial connection" requirement on the government. The court pointed out that the statute does not impose such a requirement. Rather, 21 U.S.C. section 881(a)(6) requires only a showing of "probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity...." Id. at 903.
 
 
 34
 On the merits of the government's showing, we hold that the government made the requisite showing to support the forfeiture. Kamali and Garrett contend that the government's showing of probable cause is unconvincing and unreliable and therefore does not support a summary judgment in favor of the government. There is little merit to these contentions. "Circumstantial evidence of drug transactions is sufficient to support the establishment of probable cause in a forfeiture proceeding." United States v. $93,685.61 In U.S. Currency, 730 F.2d 571, 572 (9th Cir.) (per curiam), cert. denied, 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984). While no single fact in this case is dispositive with regard to the probable cause issue, we conclude that the aggregate of facts gives rise to more than mere suspicion that the property was exchanged for or intended to be exchanged for drugs. See $93,685.61, 730 F.2d at 572 (applying "aggregate of facts" test).
 
 
 35
 The following facts are particularly significant to the probable cause issue: (1) the extremely large amount of money found in the car; (2) the suspect's arrival from Miami; (3) the suspect's connection with a Marin County motel known as a site for drug transactions; (4) the suspect's driving from Miami to the Atlanta airport to catch a flight to California, which is a common practice of drug dealers to avoid the heightened security measures in the Miami airport; and (5) the presence of cocaine in one of the suitcases containing money. The amount of money found in this case "is strong evidence that the money was furnished or intended to be furnished in return for drugs," $93,685.61, 730 F.2d at 572, and the courts have recognized that Miami is a center for drug-smuggling and money-laundering. See, e.g., Four Million, Two Hundred Fifty-Five Thousand, 762 F.2d at 904. Moreover, the courts may take into account "common experience considerations" to acknowledge recognized drug-smuggling practices. Id. Based on this aggregate of unrebutted facts, we hold that the government established probable cause to believe that the property was exchanged for or intended to be exchanged for illegal controlled substances. The government is therefore entitled to forfeiture of the money and precious metals.
 
 
 36
 We also conclude that the district court did not abuse its discretion by denying Kamali and Garrett's Fed.R.Civ.P. 56(f) request for a continuance to permit further discovery. A party opposing summary judgment is required to provide "specific facts" showing that there is a genuine issue of material fact for trial, or explain why he cannot immediately do so. Fed.R.Civ.P. 56(e) and 56(f). A Rule 56(f) request must demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." Securities & Exchange Commission v. Spence & Green Chemical Co., 612 F.2d 896, 901 (5th Cir.1980) (citations omitted), cert. denied, 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981). "The nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts...." Id.
 
 
 37
 Kamali and Garrett argue that the district court abused its discretion by denying them an opportunity to: (1) depose Fiorentino and the individual's referred to in his affidavit; (2) conduct discovery regarding the time period during which the automobile was parked in the parking lot, the vehicle's movements, activities and residences of the individual who rented the automobile; (3) discover facts concerning the contents of the automobile, particularly the cocaine; (4) conduct discovery into the possibility that one individual owned the cocaine and another owned the currency and the possibility that any large amount of currency will be accompanied by traces of cocaine; and (5) conduct discovery into the origin, use, and movements of the property and the possibility that the property was accumulated for a purpose other than drug transactions, such as foreign political activities. The district court denied the request on the ground that the desired discovery would not uncover facts sufficient to rebut probable cause. We agree.
 
 
 38
 With regard to the request to depose Fiorentino and others, "[n]either a desire to cross-examine affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment, unless other evidence about an affiant's credibility raises a genuine issue of material fact." Frederick S. Wyle, Professional Corp. v. Texaco, Inc., 764 F.2d 604, 608 (9th Cir.1985). Kamali and Garrett have offered no evidence that Fiorentino's credibility is weak regarding material facts.[6]
 
 
 39
 With regard to the request for discovery concerning the automobile, the suspect, and the property and cocaine, Kamali and Garrett fail to show how the desired discovery will rebut the government's showing of probable cause. There is no dispute that the property was found in the automobile along with cocaine and that the suspect was from Miami and engaged in criminal activities.
 
 
 40
 With regard to the allegation concerning the usual presence of cocaine with large sums of money and the allegation of foreign political activity, Kamali and Garrett may not rely upon these bald and rather fanciful assertions to counter the government's summary judgment motion.[7]
 
 
 41
 The bases for Kamali and Garrett's Rule 56(f) request are not entirely meritless, but are weak nonetheless. The district court did not abuse its discretion by denying the request.
 
 
 42
 By complying with the statutory forfeiture procedures, the government has established its legal title to the property. Tahuna, 702 F.2d at 1279. Title was defined and consummated by the judgment of the district court. Ivers v. United States, 581 F.2d 1362, 1367 (9th Cir.1978). All right, title, and interest in the property vested in the government upon commission of the act giving rise to forfeiture. 21 U.S.C. section 881(h).[8] The government owned the property before any of the claimants knew of its existence, and therefore none of the appellants has a valid claim to the property.
 
 
 43
 The claims and issues not expressly disposed of by the preceding holdings are addressed below.C. Claims of Cory
 
 
 44
 Cory argues that the property is unclaimed property and that the California Unclaimed Property Law, Cal.Civ.Proc.Code section 1500 et seq., governs its disposition instead of 21 U.S.C. section 881. He goes on to assert that federal law has not preempted state laws concerning unclaimed property so state law should control. Cory and the government have framed this issue around constitutional principles concerning federal preemption of state laws.
 
 
 45
 There is no need to decide this issue on constitutional grounds. There is little doubt that a state has the authority to enact laws regarding unclaimed property within its borders, and the federal government has made no attempt to enact uniform national legislation regarding unclaimed property. The question is not whether the state laws are valid. Rather, the question is whether the state laws ever became applicable to the property. The resolution of this issue turns on the question of when the government's interest in the property arose. Compare State of New Jersey v. Moriarity, 268 F.Supp. 546, 563 (D.N.J.1967) (competing claims to contraband property by state and federal governments resolved by determining time at which respective interests attached). As stated earlier in this opinion, all right, title, and interest in the property vested in the government at the time of the illegal transaction. Therefore, the property can not be considered unclaimed, lost, or abandoned property to which the California Unclaimed Property Law applied. It is more realistic to consider that the property was stashed in the rental car with the intent to return to it at some future time, which reinforces our holding on probable cause.
 
 D. Claim of Franchise Tax Board
 
 46
 The Franchise Tax Board's claim that the property is subject to state taxes is also rejected. The government has owned the property since the time of the illegal transaction. Under the well-settled principle of McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819), the state may not tax this property belonging to the federal government.
 
 E. Claims of Lampros and Stavoe
 
 47
 Finally, turning to the claims asserted by Lampros and Stavoe, we hold that they lack standing to assert any claims to the property. To establish standing, appellants must claim an "ownership or possessory interest in the property seized." United States v. Fifteen Thousand Five Hundred Dollars ($15,500.00) United States Currency, 558 F.2d 1359, 1361 (9th Cir.1977); see also United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) In United States Currency, 792 F.2d 1470, 1473, n. 5 (9th Cir.1986). Lampros alleges that she viewed the containers of the property in the trunk of the car as Kamali was on her way to lunch and touched one of the containers. Stavoe alleges that he viewed the automobile before Garrett located it. Their own admissions reveal the flimsy connection between them and the property. Their claims are based on a mere viewing of a car and luggage. They clearly lack standing to contest the forfeiture.
 
 
 48
 For these reasons the order of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Budget, however, is not a party in this appeal and may no longer be considered a claimant
 
 
 [2]
 In these claims, Cory sought to establish a superior interest in the property
 
 
 [3]
 21 U.S.C. section 881(a)(6) provides: (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them: ... (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter
 
 
 [4]
 21 U.S.C. section 881(d) provides: The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof
 
 
 [5]
 19 U.S.C. section 1615 provides: In all suits or actions (other than those arising under Section 1592 of this title) brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... Provided, That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court
 
 
 [6]
 Kamali and Garrett attempt to attack Fiorentino's credibility by pointing to discrepancies in his affidavit relating to such matters as the time of day when Garrett attempted to start the car, whether the fifth container in the trunk was a box or valise, and whether the property was found during unloading or an inventory
 
 
 [7]
 To support these assertions, Kamali and Garrett referred to a newspaper clipping regarding a Central American found with millions of dollars to be used for foreign political activity and a clipping regarding cocaine-tainted cash. These clippings fail to raise a material issue of fact precluding summary judgment. Frederick S. Wyle, Professional Corp., 764 F.2d at 612
 
 
 [8]
 Appellant Franchise Tax Board argues that application of 21 U.S.C. section 881(h) to this case constitutes a violation of the ex post facto clause of Article I, section 9, clause 3 of the United States Constitution. Section 881(h) became effective on October 12, 1984. Because the automobile was placed in the parking lot prior to that date, the Franchise Tax Board argues that section 881(h) may not be applied
 The ex post facto clause, however, applies only to criminal cases, Orr v. Gilman, 183 U.S. 278, 285-86, 22 S.Ct. 213, 216, 46 L.Ed. 196 (1902), and we are dealing with a civil forfeiture. "Forfeiture statutes are deemed criminal for the purpose of protecting rights secured by the Fourth and Fifth Amendments ..., but they are predominantly civil." United States v. One 1970 Pontiac GTO, 2-Door Hardtop, 529 F.2d 65, 66 (9th Cir.1976) (per curiam) (citation omitted) (imposition of burden of proof on claimant by 21 U.S.C. section 881 not unconstitutional). We therefore hold that the ex post facto clause does not apply to this case and overrule United States v. Lot No. 50, As Shown On Map Of Kingsbury Village, Unit 5, Filed In Office Of County Recorder Of Douglas County, State Of Nevada, On September 7, 1966, In Book 1 Of Maps, As File No. 33786, 557 F.Supp. 72 (D.Nev.1982), which failed to cite Pontiac GTO.