**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**1 PARCEL OF REAL PROPERTY,
LOT 4, BLOCK 5 OF EATON
ACRES, Defendant,**

**and**

**Joseph Apodaca, Claimant–Appellant.**

**No. 89–35453.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted · May 7, 1990.

Decided May 29, 1990.

Lon N. Bryant, Samuel A. Hall, Jr., Wilsonville, Or., for claimant-appellant.

Craig J. Casey, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before BROWNING, ALARCON and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

Joseph Apodaca appeals the district court's grant of summary judgment ordering the forfeiture of his home, which allegedly played a role in a drug offense. 712 F.Supp. 810. We consider whether Apodaca's sworn declaration that his home was *not* used in such a manner is sufficient to defeat a motion for summary judgment when the government has made a prima facie case for forfeiture.

I

In January, 1988, a grand jury indicted Apodaca on two counts of distributing co-

caine on May 12, 1987, and June 2, 1987, respectively. After initially entering a plea of not guilty, Apodaca agreed to plead guilty to the second count. He was sentenced to three years and ordered to pay a $10,000 fine.

The government subsequently initiated an in rem action for forfeiture of Apodaca's home pursuant to 21 U.S.C. § 881(a)(6) & (7) (1982 & Supp. V 1987). Section 881(a)(7) provides, inter alia, that:

> [a]ll real property, including any right, title, and interest (including any leasehold interest) in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment ... shall be subject to forfeiture to the United States and no property right shall exist in them....

The government alleged that Apodaca's home, located in the Eaton Acres subdivision of Portland, Oregon, "was used and intended to be used to commit and to facilitate the commission of a violation of Title 21," ER at 2, specifically 21 U.S.C. § 841(a)(1) (1982). Apodaca answered the complaint and filed a claim on the property, challenging the government's allegations that his house played a role in the June 2, 1987, transaction and other drug offenses. ER at 19–22.

On March 10, 1989, the government moved for summary judgment. In support of its motion, the government relied on affidavits and police reports indicating that the drug transaction leading to Apodaca's conviction was one of several that may have occurred at the defendant property. According to the government, on June 2, 1987, a confidential informant and an undercover agent of the Drug Enforcement Administration met with Connie Caywood, who allegedly had bought drugs from Apodaca on previous occasions, for the purpose of purchasing one ounce of cocaine. The informant and the DEA agent drove Caywood to a location in Southeast Portland near Apodaca's residence. While under surveillance, Caywood walked the remaining distance to Apodaca's house and met him outside. After several minutes, they entered the residence, where Caywood allegedly purchased 29.4 grams of cocaine. An hour and twenty minutes later, Apodaca drove Caywood to a neighborhood auto parts store. Caywood then took a taxi to a downtown Portland hotel to meet the informant and the DEA agent, to whom she handed over the cocaine. Caywood subsequently signed a statement claiming that she bought the cocaine from Apodaca while inside his house.

Apodaca opposed the government's motion, claiming in an affidavit that his home had not been used in connection with any drug offense and, even if it had, the government failed to allege that the property had played a "substantial role" in an offense, as he contends is required for a section 881 forfeiture. According to Apodaca, the drug transaction that served as the basis for the second count in the indictment occurred at the auto parts store, not at his home. He claimed that he never intended his home to be used in connection with drug transactions and that he had previously "expressed [his] desire that Connie Caywood not come to [his] residence for any purposes other than social." ER at 34. Apodaca further contended that the 29.4 grams of cocaine "had been in [his] car," "had never been inside" the defendant property, "was all that [he] possessed" and was "the largest quantity [he] had ever possessed." *Id.* In support of his claims, he pointed out that a search of the defendant property by the police produced "[n]o evidence of any illegal substance." *Id.* Finally, Apodaca challenged the credibility of Caywood, who was the only witness to the alleged transaction inside the house.

On May 15, 1989, the district court granted the government's motion for summary judgment. The court held that the government had made a prima facie case for forfeiture, and that Apodaca's "statement that the delivery of the cocaine took place at [the auto parts store] and not at his residence [was] not adequate ... to avoid forfeiture." ER at 44. The court also reject-

ed Apodaca's claim that the government was required to prove a "substantial connection" between the defendant property and the drug offense, holding that "[t]he government is only required to prove by less than prima facie proof but more than a mere suspicion that Apodaca delivered cocaine to Caywood in the defendant property." *Id.* Apodaca timely appealed this decision.[1]

## II

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Clearly, whether the defendant property was used or intended to be used to commit or facilitate the commission of a drug offense is a "material" fact in a section 881 forfeiture case. *See generally Mutual Fund Investors v. The Putnam Mgmt. Co.,* 553 F.2d 620, 624 (9th Cir.1977) ("[a] material issue is one which may affect the outcome of the litigation"). The parties disagree, however, as to whether their dispute over that fact is "genuine" as that term is used in Rule 56.

The determination of whether a factual dispute is genuine "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A genuine issue of fact exists when the nonmoving party produces evidence on which a reasonable trier of fact could find in its favor, viewing the record as a whole in light of the evidentiary burden the law places on that party. *Id.* at 252–56, 106 S.Ct. at 2512–14. Thus, a motion for summary judgment in a section 881 forfeiture action must be evaluated "in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein." *United States v. One 56–Foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1281 (9th Cir.1983); *see also United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th St.,* 901 F.2d 288, 290 (2d Cir.1990).

Under section 881(d), the government need only establish probable cause that property was used or intended to be used in connection with a drug offense in order to make a prima facie case for forfeiture. *United States v. Padilla,* 888 F.2d 642, 643 (9th Cir.1989).[2] Probable cause exists when the circumstances provide "reasonable grounds to believe that the

---

**1.** Because we find in Apodaca's favor on other grounds, we need not address the "substantial connection" issue here. We note, however, that the district court's rejection of the "substantial connection" test appears appropriate in light of our holding in *United States v. $5,644,540.00 In U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir. 1986) ("we decline to read a 'substantial connection' requirement into the forfeiture statute").

**2.** Section 881(d) does not itself establish the procedural requirements for civil forfeitures. Rather, it incorporates relevant provisions from Title 19 governing the forfeiture of property under the customs laws. Specifically, section 881(d) provides:

> The provisions of law relating to the seizure, summary and judicial forfeiture, and condemnation of property for violation of the customs laws ... shall apply to seizures and forfeitures incurred, or alleged to have been incurred, under any of the provisions of this subchapter, insofar as applicable and not inconsistent with the provisions hereof....

21 U.S.C. § 881(d) (Supp. V 1987).

The parties agree that 19 U.S.C. § 1615 is the applicable customs laws section governing forfeitures. Section 1615 provides:

> In all suits or actions ... brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; ... *Provided,* That probable cause shall be first shown for the institution of such suit or action, to be judged of by the court....

19 U.S.C. § 1615 (Supp. V 1987) (emphasis in original).

We note with some curiosity that section 1615 does not specifically mention the forfeiture of real property. This fact, however, apparently does not concern the parties, as neither mentions it in its brief. Nor does it appear to have concerned those courts that have applied section 1615 when considering forfeitures of real property under 21 U.S.C. § 881. *See, e.g., United States v. All Right, Title & Interest in Real Property & Building Known as 303 West 116th*

property was related to an illegal drug transaction, supported by less than prima facie proof but more than mere suspicion." *United States v. $5,644,540.00 in U.S. Currency,* 799 F.2d 1357, 1362 (9th Cir.1986); *see also Tahuna,* 702 F.2d at 1282. Once the government shows probable cause that the defendant property qualifies for forfeiture, the burden shifts to the party defending the property to show by a preponderance of the evidence that forfeiture is not appropriate. *Padilla,* 888 F.2d at 643.

■ The government clearly has made a prima facie case for forfeiture. Through the affidavits and attached exhibits setting forth its version of the events surrounding the June 2, 1987, drug transaction, the government has demonstrated that it had reasonable grounds to believe that the Apodaca's residence was both used and intended to be used in relation to a drug offense. This is all the government needed to do in order to show probable cause. Thus, had this case gone to trial, the burden would have been on Apodaca to prove by a preponderance of the evidence that his home had not been used in connection with a drug offense. Likewise, under *Liberty Lobby,* in order to survive summary judgment, Apodaca was required to produce evidence that a reasonable factfinder could properly rely on to rule in his favor. *See* 477 U.S. at 252–56, 106 S.Ct. at 2512–14.

■ In defending a summary judgment motion, the nonmoving party need not produce evidence in a form that would be admissible at trial. Rather, that party may rely on "any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Here, Apodaca produced a relatively precise and de-

*Street,* 901 F.2d 288, 291 (2d Cir.1990); *United States v. Premises Known as 3639–2nd St., N.E.,* 869 F.2d 1093, 1095 (8th Cir.1989); *United States v. Premises Known as 526 Liscum Dr.,* 866 F.2d 213, 216 (6th Cir.1989).

Accordingly, we will assume that the burden of proof requirements for forfeitures of real property under 21 U.S.C. § 881 are identical to those for the forfeiture of personal property under 19 U.S.C. § 1615. This assumption is not

tailed affidavit alleging that all aspects of the June 2 transaction, as well as any other drug offenses in which he may have been involved, occurred at locations other than his home. He also claimed that he stored the drugs in his car rather than his home, and that he told potential customers he refused to conduct his drug business at home. Obviously, Apodaca would be competent to testify as to these issues at trial. Moreover, Apodaca's testimony—if believed—would be highly probative to the issue of whether his home was used to facilitate drug offenses. Indeed, if the trier of fact were to find for Apodaca, his testimony alone would be sufficient to support that judgment.

### III

None of the foregoing would be particularly novel or controversial were this an ordinary civil action. The government, however, contends that forfeiture actions differ from normal civil actions in that a claimant may not defeat a summary judgment motion by self-serving declarations alone. The government seeks support for its contention from the procedural requirements of the civil forfeiture statute and our cases interpreting it.

The civil forfeiture statute does, indeed, give the government substantial procedural advantages not enjoyed by litigants in other types of civil cases. Most significantly, the government in a civil forfeiture action need not prove that the defendant property was, in fact, involved in advancing a drug transaction. As noted above, the government need only show that there is probable cause to believe that such is the case; the burden then shifts to the claimant to disprove the proposition. If the claimant offers no proof, or if the trier of fact remains in equipoise upon hearing the claimant's proof, the government wins. *See $5,644,-540.00 In U.S. Currency,* 799 F.2d at 1362–63; *Tahuna,* 702 F.2d at 1281.

inconsistent with the broad holdings of our prior forfeiture cases incorporating section 1615's provisions. *See, e.g., Padilla,* 888 F.2d at 643 n. 2 ("Section 1615, which is a customs duties statute, is used to control the burden of proof in drug forfeiture actions."); *$5,644,540.00 in U.S. Currency,* 799 F.2d at 1362 ("By virtue of 21 U.S.C. section 881(d), the burden of proof in this [forfeiture] action is controlled by 19 U.S.C. section 1615.") (footnotes omitted).

While the government is entitled to shift the burden of persuasion to the defendant, it is not entitled to have its facts deemed conclusively established. Here, Apodaca offered a detailed declaration painting a picture entirely different from that described by the government. Although the evidence in Apodaca's affidavit is hardly overwhelming, we believe that a rational trier of fact could find it to be credible.[3] Clearly, it would make a world of difference which version of events the trier of fact believes. Unless we are to say that property is forfeitable on probable cause alone—something the statute does not provide for and might well be constitutionally suspect—we must give a claimant an opportunity to present to a trier of fact his version of what happened. *See Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (" 'on summary judgment, the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion' ") (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where, as here, that version of events would support a judgment in claimant's favor, we see no basis in the statute or common sense for denying him an opportunity to present his case in open court. There is simply no other means in our system of justice to resolve disputed issues of fact.

Nor can we reject claimant's evidence simply because it consists entirely of the property owner's self-serving testimony. Neither the forfeiture statute nor any other provision of the law renders a property owner incompetent to testify in a forfeiture action; indeed, the law is to the contrary. *See generally* Fed.R.Evid. 402, 601. The fact is, the property owner will frequently be the only one competent to rebut the government's allegations of the property's involvement with the drug transaction. Absent a clear statutory command, we see no basis for deeming such evidence to be inadmissible or so inherently untrustworthy that a rational trier of fact would reject it out of hand. In sum, while the forfeiture statute gives the government a very substantial *procedural* advantage, it does not give it a *substantive* advantage; where conflicting evidence is presented, the government must subject its case to the judgment of a trier of fact, albeit under the favorable conditions provided for in the forfeiture statute.

## IV

The decision of the district court is reversed, and this case is remanded for further proceedings consistent with this opinion.

---

**3.** Were Apodaca's affidavit only to have set forth conclusory allegations, this case would be different. "Conclusory allegations unsupported by factual data will not create a triable issue of fact." *Marks v. United States,* 578 F.2d 261, 263 (9th Cir.1978) (conclusory allegation that documents subject of Freedom of Information Act disclosure had been destroyed or secreted by the government did not raise genuine issue for trial); *see also Kung v. FOM Inv. Corp.,* 563 F.2d 1316, 1318 (9th Cir.1977). Here, by contrast, Apodaca has set forth in some detail an explanation of how the June 2, 1987, drug transaction did not involve his house.