ESTATE OF GARY A. GALLO, DECEASED, HOWARD R. JANES, ADMINISTRATOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Gallo
Docket No. 27662-89
United States Tax Court
T.C. Memo 1992-327; 1992 Tax Ct. Memo LEXIS 346; 63 T.C.M. (CCH) 3115; June 8, 1992, Filed *346 Decision will be entered for respondent. Woodford G. Rowland and Benjamin W. Gale, for petitioner. Debra A. Bowe, for respondent. RUWE
RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined the following deficiency and additions to tax in petitioner's Federal income tax for taxable year 1984: Additions to Tax [1]
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6653(a)(2)
Sec. 6654(a)
Sec. 6661
(1)
(1)
$ 225,630
$ 56,408
$ 11,282
50 percent of
$ 14,187
$ 56,408
the interest due
on $ 225,630
After concessions, the issue for decision is whether petitioner had $ 468,001 of unreported income in 1984. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, supplemental stipulation of facts, and attached exhibits are incorporated herein by this reference. At the time the petition was filed and at the time of trial, the Estate of Gary A. Gallo, Deceased (petitioner) was in probate in the Superior Court of California, County of El Dorado. Albina P. Gallo, Mr. Gallo's grandmother, and Dorothy L. Fallon, Mr. Gallo's aunt, were appointed *347 coadministrators of petitioner on March 1, 1985. Both Ms. Gallo and Ms. Fallon have since died, and Howard R. Janes was appointed administrator of petitioner on September 25, 1987. On December 16, 1984, the body of Gary A. Gallo (decedent) was found in the trunk of his Mercedes Benz sedan in a parking lot in San Rafael, California. The Marin County coroner determined the cause of decedent's death to be multiple close-range gunshot wounds to the head. Valuable jewelry worn by decedent, including a Rolex watch and gold and diamond rings, had not been disturbed. Detective John J. Nunez of the San Rafael Police Department was assigned to investigate decedent's murder. On December 18, 1984, pursuant to a search warrant, Detectives Nunez, Michael Miller, and David Burns searched decedent's residence at 54 Divot Court, South Lake Tahoe, California. During the search, Detective Burns kept a list of the items seized which indicated that decedent was involved in drug trafficking. These items included several glass jars containing marijuana buds, mushrooms, a small quantity of cocaine, gelatin capsules containing a white powder, pay and owe sheets, and an Ohaus triple beam scale. Police *348 also found $ 5,190 in cash, a birth certificate in the name of Fred Stanford Staples, which Detective Nunez thought was "suspicious" since he was unaware of anyone by that name residing at decedent's residence, and information indicating that decedent maintained safe deposit boxes. The police executed search warrants on safe deposit boxes held in decedent's name at the Central Bank of South Lake Tahoe and at the South Lake Tahoe Branch of the Bank of America. Police found $ 40,000 in cash in the Central Bank safe deposit box and large bags of silver coins in the Bank of America safe deposit box. On June 6, 1985, the United States Attorney for the Eastern District of California in Sacramento filed two forfeiture actions, one pertaining to the $ 40,000 found in the safe deposit box and one pertaining to the $ 5,190 found in decedent's residence. Ms. Fallon, coadministrator of petitioner at the time, intervened in both cases as claimant. In March 1986, the cases were settled with one-half of the contested amount or $ 22,595 being paid to petitioner, and one-half being forfeited to the Federal Government. On June 12, 1986, Detective Nunez received a telephone call from James A. *349 Du Charme, the attorney representing Albina Gallo. Mr. Du Charme informed Detective Nunez that he had been contacted two weeks earlier by Ms. Fallon, who as administrator of petitioner, was responsible for paying bills accrued against the estate. Ms. Fallon had received a bill for rental of a safe deposit box (#126) at the Strawberry Branch of West America Bank. The bill, in the name of Fred Staples, had been delivered in October 1985 to a post office box subscribed to by decedent. Safe deposit box 126 at the West America Bank had been rented on October 16, 1984, under the name of Fred Staples. In the appropriate spaces on the rental form, the renter had listed his address as P.O. Box 7977, South Lake Tahoe, California 95731, his telephone number as 916-577-2055, and his mother's maiden name as Billings. These were the address, phone number, and mother's maiden name of decedent. Bank records showed that all access to the safe deposit box by the individual calling himself Fred Staples had been between October 16, 1984, and December 14, 1984. Based on his review of the safe deposit box rental form and his knowledge that it was decedent's phone number, address, and mother's maiden *350 name on the rental form, Detective Nunez concluded that decedent had been using the alias, Fred Staples. On June 19, 1986, Detective Nunez obtained and executed a search warrant for the West America Bank safe deposit box. Inside the safe deposit box, police found $ 380,000 in U.S. currency (38 bundles of 100 one hundred dollar bills), which they immediately seized. Immediately after searching the safe deposit box, police showed a driver's license photograph of decedent to a safe deposit attendant at the bank who identified him as the man she knew as Fred Staples. On October 22, 1986, the United States Attorney for the Northern District of California in San Francisco filed a forfeiture action pertaining to the $ 380,000 found in the safe deposit box at the West America Bank. On November 17, 1986, Ms. Fallon made a claim for the $ 380,000 on behalf of petitioner. On November 20, 1987, judgment in United States v. $ 380,000.00 in U.S. Currency was filed, and the $ 380,000 was forfeited to the United States pursuant to 21 U.S.C. sec. 881(a)(6) as the proceeds of drug-trafficking activity. [1]
*351 Respondent sought to determine petitioner's taxable income for 1984. Decedent had filed Federal income tax returns for taxable years 1981, 1982, and 1983. No Federal income tax return was filed on behalf of petitioner for taxable year 1984. No books or records were available to respondent for use in determining decedent's tax liability for 1984 other than the information secured by revenue agents from third-party sources. Consequently, Internal Revenue Service Agent Gary L. Reynolds used the expenditures method to determine petitioner's 1984 taxable income. Agent Reynolds first analyzed bank deposits and expenditure information for the year. Agent Reynolds determined that decedent had maintained checking accounts at the Bank of America and at the Central Bank. He calculated that net disbursements from the two accounts as of December 14, 1984, were $ 4,561 and $ 6,754, respectively. Agent Reynolds also took into account cash payments to decedent's Dean Witter Reynolds, Inc., account. [2] The account records showed that on February 8 and March 23, 1984, decedent deposited $ 7,000 and $ 14,000 in cash into his Dean Witter account. Agent Reynolds also included in petitioner's *352 income for 1984 the $ 5,190 cash found in decedent's residence, the $ 40,000 cash found in decedent's safe deposit box at Central Bank, and the $ 380,000 cash found in the safe deposit box at West America Bank under the name of Fred Staples. Finally, estimated personal living expenses of $ 1,500 per month ($ 17,250 for the year) were added to income. The resulting adjustment to income of $ 468,001 was computed as follows: 1984
Cash payments to Dean Witter account
$  21,000 Net disbursements from Bank of America
4,561 Net disbursements from Central Bank
6,754 Cash found in Gary Gallo's residence, 12/18/84
5,190 Cash found in Central Bank safe deposit box
40,000 Cash found in West America Bank safe deposit box
380,000 Estimated personal living expenses
17,250 $ 474,755 Less: Receipt of proceeds on installment
note deposited to Central Bank
checking account
(6,754)
Net income
$ 468,001 Based on the foregoing, respondent issued a notice of deficiency to petitioner for taxable year 1984. *353 OPINION The issue for decision is whether petitioner had unreported income as determined by respondent. Petitioner contends that the notice of deficiency is not entitled to a presumption of correctness. The general rule is that respondent's determination is presumed correct and the taxpayer has the burden of proving respondent's determination wrong. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). [3] In the ordinary case, the courts impose this burden of proof on the taxpayer without looking behind the notice of deficiency to examine the evidence used by the Commissioner or the propriety of her motives or administrative policies or procedures in making the determinations reflected in the notice. Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989). Courts have recognized a *354 limited exception to this general rule in cases involving unreported illegal income where respondent introduced no substantive evidence but rested on the presumption of correctness and the taxpayer challenged the notice of deficiency. Dellacroce v. Commissioner, 83 T.C. 269, 280 (1984); Llorente v. Commissioner, 74 T.C. 260, 264 (1980), affd. in part and revd. in part 649 F.2d 152 (2d Cir. 1981). The Ninth Circuit, to which appeal in this case would be taken, has held that respondent cannot rely on the presumption of correctness in such a case "in the absence of a minimal evidentiary foundation" by respondent showing that the taxpayer received unreported income from a charged activity. Weimerskirch v. Commissioner, 596 F.2d 358, 361 (9th Cir. 1979), revg. 67 T.C. 672 (1977). This is true even where the taxpayer has not made a showing thatthe notice was arbitrary. Weimerskirch v. Commissioner, supra at 361; Petzoldt v. Commissioner, supra at 689. In the Weimerskirch line of cases, none of the taxpayers were shown by admissible evidence *355 to have actually possessed the funds that respondent determined to be taxable income. Petzoldt v. Commissioner, supra at 690 (citing Schad v. Commissioner, 87 T.C. 609, 618-620 (1986), affd. without published opinion 827 F.2d 774 (11th Cir. 1987)). The Ninth Circuit has held that where "some substantive evidence" is introduced demonstrating that the taxpayer received unreported income, then the taxpayer must establish by a preponderance of the evidence that the Commissioner's determination is arbitrary or erroneous. The court went on to find that evidence of the taxpayers' ownership and possession of gold coins and bank deposits, which the Commissioner determined to be income, was sufficient to require the taxpayers to rebut the presumption of correctness. Delaney v. Commissioner, 743 F.2d 670, 671-672 (9th Cir. 1984), affg. T.C. Memo. 1982-666. Connecting decedent to the funds that form the basis of the deficiency, in the instant case, is therefore sufficient to require petitioner to meet the burden of proving the deficiency determination erroneous. Schad v. Commissioner, supra at 620. *356 Respondent has offered ample evidence that decedent was in possession of the funds respondent seeks to tax as income. Police seized $ 5,190 in cash during a search of decedent's residence and $ 40,000 in cash from decedent's safe deposit box. Respondent offered evidence establishing that the $ 380,000 cash in the West America Bank safe deposit box was placed there by decedent using the alias of Fred Staples. This evidence included the birth certificate for Fred Staples found in decedent's residence, the Fred Staples safe deposit box rental form containing the vital statistics of decedent, and a bank employee's identification of decedent as the man she knew as Fred Staples. The bank and brokerage accounts used in respondent's determination were clearly owned by decedent. Respondent has connected petitioner to the funds that form the basis of the deficiency. The burden of proof is on petitioner to prove that respondent's determination is incorrect. Petitioner next contends that respondent's use of the cash expenditures method to reconstruct petitioner's income was unreasonable. The cash expenditures method is a variant of the net worth method of establishing unreported taxable *357 income. Taglianetti v. United States, 398 F.2d 558, 562 (1st Cir. 1968), affd. 394 U.S. 316 (1969); Petzoldt v. Commissioner, supra at 694. The net worth method involves ascertaining a taxpayer's net worth at the beginning and end of a tax period and determining that part of any increase which is attributable to unreported income. Petzoldt v. Commissioner, supra at 694. The cash expenditures method is based on the assumption that the amount by which a taxpayer's expenditures during a taxable year exceed his reported income and nontaxable sources is unreported income. Petzoldt v. Commissioner, supra at 694. Respondent's deficiency determination is based primarily on the currency found in the safe deposit boxes and the assumption that it was earned in 1984. Petitioner argues that respondent has failed to satisfy the necessary requirements for use of the cash expenditures method as set forth in Holland v. United States, 348 U.S. 121 (1954). We agree that the general requirements set forth in Holland are applicable to cases involving the cash expenditures *358 method of income reconstruction. Petzoldt v. Commissioner, 92 T.C. at 694. The net worth method requires that opening net worth be established with reasonable certainty to serve as a starting point. Holland v. United States, supra at 132. This is because the foundation for the income determination is the difference between beginning and ending net worth. Petzoldt v. Commissioner, supra at 694-695. In the cash expenditures method, reasonable certainty may be established without a determination of precise net worth figures, "'as long as the proof * * * makes clear the extent of any contribution which beginning resources or a diminution of resources over time could have made to expenditures.'" Petzoldt v. Commissioner, supra at 694-695 (quoting Taglianetti v. United States, supra at 565). The relevant issue in a cash expenditures case is whether any expenditures in excess of reported income can be accounted for by assets available at the beginning of the relevant period or are attributable to nontaxable receipts during the period, such as loans, gifts, or inheritances. *359 Petzoldt v. Commissioner, supra at 695 (citing Taglianetti v. United States, supra at 566). The evidence establishes to a reasonable degree of certainty that the currency in decedent's safe deposit boxes and at his residence and decedent's expenditures did not come from assets available at the beginning of 1984 or from nontaxable sources of income during that year. It is clear that at the time of decedent's death, he possessed the $ 5,190 found at his residence and the $ 40,000 found in the safe deposit box held in his name. Respondent established that decedent, using the alias Fred Staples, placed $ 380,000 in the West America Bank safe deposit box between October 1984 when the box was first rented, and December 16, 1984. The records from decedent's known bank and investment accounts do not indicate that these large amounts of currency were withdrawn from those accounts. The income reported on decedent's income tax returns for 1981 through 1983 indicates that decedent could not have accumulated a substantial cash hoard from income reported in those prior years, and the returns fail to indicate assets which could have been a source *360 for such large amounts of cash. See Petzoldt v. Commissioner, supra at 692; Cohen v. Commissioner, 176 F.2d 394, 397-398 (10th Cir. 1949), affg. Comeaux v. Commissioner, 10 T.C. 201 (1948), Clemons v. Commissioner, a Memorandum Opinion of this Court dated Feb. 18, 1948, Polk v. Commissioner, a Memorandum Opinion of this Court dated Feb. 6, 1948, Carnahan v. Commissioner, 9 T.C. 1206 (1947), and Cohen v. Commissioner, 9 T.C. 1156 (1947). Where no relevant leads are forthcoming, respondent is not required to negate every possible source of nontaxable income. This is especially true in this type of case where the burden of proof is on the taxpayer, and the taxpayer has maintained no records and has used large amounts of currency. The failure of petitioner to present credible evidence of a nontaxable source of income must fall on petitioner's shoulders. Petzoldt v. Commissioner, supra at 695-697. The only explanation of a nontaxable source of funds which was offered by petitioner was that decedent possessed millions of dollars prior to the year *361 in issue. These millions were allegedly buried someplace prior to the year in issue. We reject the evidence upon which petitioner relies. At trial, petitioner offered the testimony of Perry A. McCullough, who had been decedent's close friend from 1979 through 1983. Mr. McCullough was, at the time of trial, incarcerated at Terminal Island Federal Correctional Institution for violation of 21 U.S.C. sec. 848, Continuing Criminal Enterprise, and nine other drug-related offenses (e.g., conspiracy with intent to distribute). The conduct for which he was convicted occurred between January 1986 and June 1989. Mr. McCullough testified that he once asked decedent where his money came from, since decedent had no visible means of support, and that decedent told him that he had $ 6 million buried in the ground. Mr. McCullough never saw the alleged $ 6 million and testified that he thought the statement was an exaggeration. Mr. McCullough also testified that in late 1982 and into 1983, he and decedent contemplated two large-scale real estate investments and that decedent was to supply the funds for the downpayments. Ultimately, neither of these investments was made and decedent never made *362 the downpayments or placed any funds in escrow. On cross-examination, respondent asked Mr. McCullough whether he had been involved in drug transactions with decedent or carried large sums of money to or for decedent. Mr. McCullough declined to answer due to the pending appeal of his criminal conviction. We do not find Mr. McCullough's testimony persuasive. He admitted that he never saw the alleged cash hoard, or the funds decedent was purportedly going to use to make the downpayments in the contemplated real estate ventures. Moreover, even if we assume that the $ 6 million actually existed, petitioner has not offered evidence that any of the funds forming the basis of respondent's deficiency determination were part of the alleged cash hoard. Petitioner also points to a reported receipt of $ 70,000 in installment-sale payments in 1983 as a source for the 1984 expenditures. However, petitioner has failed to offer any evidence establishing a connection between those funds and the funds constituting the basis of respondent's deficiency determination. Based on the foregoing, we find petitioner has failed to carry its burden of proof. The expenditures method relies on a demonstration *363 that there are no sources of nontaxable income or that there is a likely source of taxable income. Holland v. United States, 348 U.S. at 137-138. Respondent has also demonstrated that drug trafficking was a likely source of income for decedent. Detective Burns testified regarding the presence of quantities of several drugs in decedent's residence. He also testified to the presence of a triple beam scale and pay and owe sheets. The large quantities of cash discovered in decedent's possession and the circumstances of his death further suggest that decedent was involved in drug trafficking in 1984. Finally, petitioner argues that respondent may not tax funds forfeited to the Federal Government. In support of its position, petitioner cites United States v. $ 5,644,540.00 in U.S. Currency, 799 F.2d 1357 (9th Cir. 1986). Petitioner's reliance is misplaced. That case was a forfeiture action over cash and other property discovered in the trunk of an unattended rental car. The Ninth Circuit, in affirming the District Court's forfeiture to the Federal Government, discussed the merits of some of the other claims to the currency, including that *364 of the California Franchise Tax Board (FTB). The court rejected the FTB's claim that the property was subject to State income taxes. The issue here is not the ability of State government to tax forfeited proceeds, but the Federal income tax consequences to a taxpayer who exercised dominion and control over funds subsequently forfeited to the Federal Government. Under section 61, gross income includes "all income from whatever source derived". The Supreme Court has held that whenever a taxpayer acquires wealth and has such control over the property "that, as a practical matter, he derives readily realizable economic value from it", the taxpayer is regarded generally as having received income and is liable for tax on the income. James v. United States, 366 U.S. 213, 219 (1961); Wood v. United States, 863 F.2d 417, 419 (5th Cir. 1989). Under such circumstances, we have held that the property is included in a taxpayer's gross income despite the fact that it is subsequently forfeited to the Government. Gambina v. Commissioner, 91 T.C. 826 (1988). We have already held that decedent was in possession of the seized currency *365 in 1984. Consequently, we find he exercised dominion and control over the money and the forfeited funds are includable in petitioner's income. Decision will be entered for respondent. Footnotes
1. Respondent has conceded the additions to tax.↩
1. The parties stipulated these facts. The parties also included in their stipulation copies of the District Court's judgment and the seizure warrant with the supporting affidavit. Petitioner objected to introduction of the factual information contained in these exhibits on the ground that it constitutes inadmissible hearsay. Respondent made no arguments that the factual information in the documents was not hearsay, nor did she argue that such factual information was covered by any exceptions to the general inadmissibility of hearsay such as that contained in Fed. R. Evid. 803(8)(C)↩. We therefore did not consider any of the factual findings and conclusions in those documents as evidence of their truth.
2. In calculating petitioner's tax deficiency, respondent adjusted petitioner's income for short-term capital losses from stock sales reflected in the Dean Witter account records.↩
3. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the year 1984.↩